Nos.  100,792,
100,793

STATE OF KANSAS, *Appellee*, v. DERRICK FREEMAN, *Appellant*.
(253 P.3d 1)

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 24, 2009.

Opinion filed April 1, 2011.

*Michael G. Highland*, of Bonner Springs, argued the cause and was on the briefs for appellant.

*Todd G. Thompson*, county attorney, argued the cause, and *Frank E. Kohl*, former county attorney, and *Steve Six*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.: Derrick Freeman filed a motion to withdraw his nolo contendere pleas after discovering his criminal history score was

worse than expected, which could cause a longer sentence of imprisonment. After the district court denied his motion, the Court of Appeals affirmed. We granted Freeman's petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b). We hold the district court erred in denying his plea withdrawal motion; we reverse, vacate the sentence, and remand.

## FACTS

In case 2007 CR 717, Freeman agreed to plead nolo contendere to one count of attempted aggravated robbery, a level five person felony, one count of nonresidential burglary, a level seven nonperson felony, and one count of criminal damage to property, a level nine nonperson felony. He also agreed to plead nolo contendere to one count of misdemeanor theft in case 2008 CR 52. In exchange for his pleas, the State agreed to dismiss the remaining charges of aggravated battery, residential burglary, theft, criminal damage to property, failure to stop and remain at the scene of a property damage accident, and failure to give notice of accident.

During plea negotiations, the State originally had believed Freeman's criminal history score for the primary 2007 CR 717 case was a "B," while Freeman believed his score was the less serious "C." As a result, the assistant county attorney, with Freeman's counsel in his office, then called court services to learn Freeman's actual criminal history. According to defense counsel's later motion: "At that time, court services informed the assistant county attorney that defendant did appear to be in criminal history category 'C,' as he had claimed."

According to Freeman, he agreed to plead nolo contendere because a criminal history "C" would mean he would only be facing a presumptive sentence of 71 months under the Kansas Sentencing Guidelines Act. No written copy of the plea bargain appears in the record, and the parties stated at oral argument before this court that no written plea agreement was ever drafted.

At the February 27, 2008, plea hearing, the district judge asked Freeman's counsel, "Where does he fall on the sentencing guidelines?" Counsel replied:

"We think he's going to get 54, make sure I am right here, 57 months on the first case [2007 CR 717] that I named, and then because he[is] in C box. And then the second one [2008 CR 52] he will be in B box, 14 months is what we are anticipating. And totally 57 and 14 for 71 [months]."

The judge made no further inquiry about Freeman's criminal history or his presumptive sentences per sentencing grid boxes. He also never advised Freeman of the maximum penalties that could be imposed upon acceptance of the plea for his crimes under K.S.A. 22-3210(a)(2). Rather, the judge accepted Freeman's pleas, found him guilty of the charges, and dismissed the remaining counts.

Three weeks later, on March 18, Freeman's presentence investigation (PSI) reports prepared by court services now calculated his criminal history score in 2007 CR 717 as "B" and in 2008 CR 52 as "A." Because of the increased severity in Freeman's criminal history scores, the PSI showed that the grid box's middle sentence for his primary offense in 2007 CR 717 increased from 57 to 120 months and his middle sentence in 2008 CR 52 increased from 14 to 16 months. After learning from the PSI that his criminal history scores were worse than expected, Freeman filed a motion to withdraw his pleas because they were "unknowing and involuntary."

In his motion, Freeman contended the parties mistakenly believed he would be facing a controlling sentence of 57 months in 2007 CR 717 and 14 months in 2008 CR 52 for a total of 71 months. He contended he would not have entered into the plea agreement had he known his actual criminal history was "B" in 2007 CR 717.

At the plea withdrawal hearing, Freeman's counsel stated that he was going to stand on the written motion, but believed the plea hearing "was pretty much done by the book." The prosecutor responded, "I don't disagree with what [defense counsel] said in his plea as far as we negotiated that and talking about it being a Class C. [I] [o]riginally thought Mr. Freeman was a category B for sentencing." He then argued that Freeman nevertheless "should have been aware of what his record was." The district judge denied the motion, stating, "I reviewed the transcript and also the motion and there are no grounds whatsoever to justify the Court allowing Mr. Freeman to withdraw his plea."

After the judge denied his motion, Freeman requested a downward departure to 71 months. He argued he would not have pled if he had known he was going to receive 136 months, stating, "I pled to 71 months because I was trying to hurry up and get it done before I have a baby due and I have three other boys. My mama says she needs me and that's why I took the 71 months." The judge denied Freeman's departure request and sentenced Freeman to concurrent sentences of 120 months in 2007 CR 717 and 16 months in 2008 CR 52.

Freeman timely appealed, and the Court of Appeals affirmed in *State v. Freeman*, No. 100,793, 2009 WL 1140347 (Kan. App. 2009) (unpublished opinion). We granted Freeman's petition for review.

## ANALYSIS

Issue: *The district court erred in denying Freeman's motion to withdraw pleas.*

Freeman argues he should have been allowed to withdraw his pleas because he was misled by his counsel and the State in accepting the plea deal due to their mistaken belief that his presumptive sentence was 71 months. He further contends he accepted the plea deal for this sentence because he wanted to serve the minimal amount of time to be able to support his family. Freeman finally points out the judge failed to advise him of the maximum sentence as required by K.S.A. 22-3210(a)(2) and (3). The State responds that Freeman should not be able to withdraw his plea because "his plea is not rendered involuntary by his reliance on erroneous criminal history information."

### Standard of Review

We recently articulated our standard of review in *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008):

"In reviewing a presentence denial of a motion to withdraw plea, we employ an abuse of discretion standard of review, as suggested by the language of the statute. Further, we require the defendant to bear the burden of establishing the abuse of discretion. *State v. Harned*, 281 Kan. 1023, 1042, 135 P.3d 1169 (2006). However, in order for the district court's decision to receive the full measure of

that standard's deference, it must have been based upon a correct understanding of the law."

*Discussion*

As we acknowledged in *Schow,* K.S.A. 22-3210(d) provides that a guilty or nolo contendere plea may be withdrawn before sentencing "for good cause shown." Kansas courts review three factors commonly known as *Edgar* factors, after *State v. Edgar,* 281 Kan. 30, 36, 127 P.3d 986 (2006), when considering whether the requisite "good cause" has been shown: (1) whether the defendant was represented by competent counsel, (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made. *State v. Aguilar,* 290 Kan. 506, 511, 231 P.3d 563 (2010) (collecting cases discussing the *Edgar* factors). While the *Edgar* factors are "viable benchmarks for judicial discretion," we made clear they should not be relied on to the "exclusion of other factors." *Aguilar,* 290 Kan. at 512. See also *State v. Anderson,* 291 Kan. 849, 856, 249 P.3d 425 (2011) ("The district court also may consider other factors when determining whether good cause is shown.").

The Court of Appeals panel interpreted Freeman's appellate arguments as two-fold: (1) the district court failed to inform him of the possible maximum penalty of 120 months prior to entering his plea as required by K.S.A. 22-3210(a)(2); and (2) "he was induced into entering into the plea agreement out of fear that he needed to serve the least amount of time for his family." *Freeman,* 2009 WL 1140347, at *1.

The panel rejected both arguments. Under the panel's interpretation, Freeman's appellate position simply did not include a contention regarding mutually mistaken belief about his criminal history. While the panel acknowledged that particular argument had been raised at the district court, it appeared to essentially declare that the argument had been abandoned by Freeman on appeal:

"*In contrast to his claims on appeal,* the record discloses that Freeman's arguments to the lower court centered solely around the issue of whether the parties' mistaken belief about his criminal history constituted good cause to allow his plea to be withdrawn. We note this issue is controlled by our Supreme Court's recent decision in *Schow. Notwithstanding, limiting our review to his present claims in*

*this appeal,* we find that Freeman has failed to meet his burden of establishing the existence of good cause for permitting the plea withdrawal." (Emphasis added.) *Freeman,* 2009 WL 1140347, at *2.

We disagree with the panel that Freeman abandoned his district court contention that the mutually mistaken belief about his criminal history constituted good cause to withdraw his plea. While Freeman's brief is not a model of precision, it sufficiently raises the issue for us to consider. It states: "In addition to [1] the failure to apprise the defendant of the possible maximum term faced as a result of the plea, [2] and each of the party's [*sic*] mistaken belief as to the defendant's criminal history score, [3] the defendant asserted that he only took the plea and 71 month deal due to the then upcoming birth of his child and three other children at home." His brief further states: "The defendant contends that he was misled into accepting the plea deal of the state. It was the state's assumption, indeed all party's [*sic*] assumption, in making the plea arrangement that the defendant faced a total of 71 months." *Cf. State v. McCaslin,* 291 Kan. 697, 713, 245 P.3d 1030 (2011) (stating that while appellant's argument was not in depth, it was "sufficient to preserve the issue for our review").

We agree with the panel, however, that the resolution of this issue on the merits is controlled by *Schow.* There, the State and the defendant were mutually mistaken as to his criminal history score before he pled guilty. When his correct score was discovered and defendant was subjected to a higher sentence, he filed a motion to withdraw his guilty plea. His motion was denied by the district court and the Court of Appeals affirmed the denial. We reversed, agreeing that a defendant could not meet his or her statutory good cause burden by simply declaring that the parties were mutually mistaken about the criminal history score. We acknowledged, however, the circumstances giving rise to the mistake could implicate the factors listed in *Edgar,* 281 Kan. at 36, and should be available for consideration by the court.

We held:

"[A] defendant seeking to withdraw his or her plea prior to sentencing has the burden to show the existence of good cause for permitting the plea withdrawal. In determining the existence of good cause, the district court should consider

whether: (1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. Where a defendant has pled guilty pursuant to a plea agreement which was based upon a mutual mistake as to defendant's criminal history score, the district court may consider the circumstances giving rise to the mutual mistake to the extent they may implicate the factors applicable to the existence of good cause to withdraw a plea." *Schow*, 287 Kan. at 546.

Here, the district judge summarily denied Freeman's plea withdrawal motion. There was no *Edgar*-style analysis before ruling. See *Schow*, 287 Kan. at 546. Accordingly, as in *Schow*, we must conclude the judge's decision was not based on a correct understanding of the law. More particularly, also as in *Schow*, we must conclude he abused his discretion because he failed to "consider the circumstances giving rise to the mutual mistake" and their effect on the "factors applicable to the existence of good cause to withdraw a plea." 287 Kan. at 546.

Accordingly, we reverse the denial of Freeman's motion to withdraw plea and remand for the district court to apply the appropriate legal standards to determine whether Freeman established good cause and then to exercise its discretion in ruling on his motion.

Judgment reversed, sentence vacated, and case remanded for further proceedings.