NOT DESIGNATED FOR PUBLICATION

No. 113,310

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DESIREE DANIELLE LLAMAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARC S. BRAUN, judge. Opinion filed January 8, 2016. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON, J., and HEBERT, S.J.

*Per Curiam*:  In this direct criminal appeal, Desiree Danielle Llamas challenges both the district court's denial of her presentence motion to withdraw her no-contest plea to possession of methamphetamine and her resulting sentence. We affirm.

In April 2014, the State charged Llamas with one felony count of possession of methamphetamine and misdemeanor counts of interference with law enforcement and unlawful use of drug paraphernalia. The underlying facts are not well developed in the record on appeal. According to a confidential affidavit filed with the complaint, the

1

police officer received a description of a woman wanted on a felony warrant who was last seen in a particular area of Topeka. Shortly thereafter, he saw a woman in that same area who appeared to match the description. As he approached the woman to confirm or deny his suspicions, the woman took off running. The officer soon caught up with the woman, who eventually identified herself as Llamas. After the officer arrested Llamas on an outstanding city warrant, another officer searched her and found a small plastic bag with residue in it, which field tested positive for methamphetamine, and a glass smoking pipe.

Less than a month later, Llamas entered a plea agreement with the State. In return for Llamas' no-contest plea to possession of methamphetamine, the State agreed to dismiss the other two charges.

Before accepting Llamas' no-contest plea, the district court engaged in a rather lengthy plea colloquy with her. Llamas acknowledged her understanding of the various rights she was giving up and the possible sentence she faced by entering a plea. Llamas assured the court that no one had forced, threatened, or coerced her to plead; nor had anyone promised her a certain outcome. When asked about her court-appointed attorney, Megan Walsh, Llamas responded that she was satisfied with her conversations with Walsh.

Prior to her sentencing, however, the court allowed Walsh to withdraw and appointed new counsel for Llamas so she could move to withdraw her plea based on Walsh's alleged ineffective assistance. Pertinent to this appeal, Llamas complained that Walsh failed to understand and explain to Llamas that she could move to suppress the evidence against her based on discrepancies between the description of the woman the officer was on the lookout for and Llamas. Llamas stated that had Walsh properly advised of her right to seek suppression, she would not have entered a plea.

The district court conducted an evidentiary hearing on Walsh's motion to withdraw her plea. Notably, Llamas and Walsh gave sometimes conflicting testimony about what they did or did not discuss prior to Llamas' plea.

For the most part, Llamas testified consistently with the allegations in her motion to withdraw her plea. Llamas recalled that during her first of two 15- to 20-minute meetings with Walsh at the jail, Llamas asked Walsh why the officer had stopped her that day when she was not doing anything wrong. Llamas could not recall Walsh ever mentioning that she could try to keep the evidence out as a result, *i.e.*, move to suppress the evidence based on the officer's supposed lack of reasonable suspicion to stop her. Rather, it was only after Llamas had entered her plea and Walsh had provided her with a copy of the officer's narrative and report that Llamas came to the conclusion that she did not match the description of the wanted woman, nor was she heading in that woman's anticipated direction of travel when the officer approached her. For example, the officer's report described the wanted felon as a white female with dark hair who was approximately 5 foot, 4 inches tall, 120 pounds, and wearing a pink tank top and blue jeans. Llamas testified that she is 5 foot 6 inches tall, 105 pounds, Hispanic, and was wearing a red tank top, brown hat, and jeans adorned by sparkles and rips. Llamas said that if she had known of these discrepancies, she would have filed a motion to suppress rather than entering a plea.

Walsh testified she and Llamas had discussed possible suppression issues during their meetings at the jail. Those discussions came after Walsh had conducted 1 to 2 hours of research and consulted with other attorneys in her office about possible suppression issues. Walsh vaguely recalled that she and Llamas had discussed the officer's initial contact with Llamas. But that initial contact was not focused on researching suppression issues or discussing the issues with Llamas because Walsh believed the description in the police report was similar to Llamas. Consequently, Walsh advised Llamas that a motion to suppress would not be particularly strong or a "slam dunk," which Walsh could tell

3

frustrated Llamas. The focus of their conversation then changed to whether Llamas should enter a plea. At some point during that discussion, Llamas asked about appealing a plea, but Walsh advised her it was difficult to withdraw a plea.

At the close of the hearing, the district court pronounced its findings in support of its denial of Llamas' motion to withdraw her plea. In particular, the court highlighted the conflicting testimony about what Llamas and Walsh did or did not discuss regarding possible suppression issues. Noting that the merits of any suppression issue were not before it, the court found Walsh had discussed suppression issues with Llamas. Although the court did not expressly find Llamas not credible, it did highlight some inconsistencies in Llamas' testimony about what she did or did not understand at the time of her discussions with Walsh and at the evidentiary hearing on her motion to withdraw. In sum, the court found Walsh was competent in that she "did exercise due diligence, did focus on the issues, did do research and did have consultation with others and apparently advised her client based on the information that she had."

The district court further found Llamas had not been "misled, coerced, mistreated or unfairly taken advantage of" when she entered her plea, noting that, as is its normal practice, it carefully went through a lengthy plea colloquy with Llamas before accepting her plea—a process Llamas was already familiar with given her criminal history. Based on the collective evidence presented at the evidentiary hearing, including the plea hearing transcript, the court found Llamas' "plea . . . was fairly and understandingly made," and she had not shown good cause to withdraw it.

The district court subsequently imposed a presumptive sentence of 18 months' intensive-supervision probation subject to an underlying 20-month prison sentence. Llamas appeals.

4

Llamas first complains the district court abused its discretion in concluding she had failed to establish good cause to withdraw her plea.

*Standard of review*

By statute, "[a] plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2014 Supp. 22-3210(d)(1). Thus, we review a district court's denial of a motion to withdraw a plea for an abuse of discretion. See *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012). A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based. *State v. Huddleston*, 298 Kan. 941, 960, 318 P.3d 140 (2014). The defendant has the burden of proving an abuse of discretion. *Macias-Medina*, 293 Kan. at 836. And when, as here, the district court makes factual findings based on evidence presented at a hearing, we must defer to those findings as long as they are supported by substantial evidence. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). In reviewing for substantial evidence, we cannot reweigh the evidence or assess witness credibility. See 291 Kan. at 855.

As recognized by the district court here, certain factors can be considered by a district court in exercising its discretionary decision on the existence (or lack thereof) of good cause to withdraw a plea. Those factors, often referred to as the "*Edgar* factors" include: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Freeman*, 292 Kan. 24, 28, 253 P.3d 1 (2011) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). Notably, these factors have been deemed "viable benchmarks for judicial discretion," but not all of these factors must be in the defendant's favor in every case and other factors

5

may be considered by the district court in making its discretionary decision on the existence or nonexistence of good cause. See *State v. Aguilar*, 290 Kan. 506, 511-13, 231 P.3d 563 (2010). In fact, as Llamas stresses in her brief, our Supreme Court has recognized, "[m]erely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea." 290 Kan. at 513.

Llamas focuses her argument on appeal primarily on the first factor, *i.e.*, Walsh's competence. According to Llamas, Walsh's failure to realize all of the discrepancies and information in the police reports that may have strengthened a motion to suppress rendered Walsh's advice on that issue incompetent. Particularly, Llamas complains that Walsh rendered lackluster advocacy when Walsh essentially failed to fully investigate the reports, discover the discrepancies, and discuss the favorable evidence with Llamas. See *Shumway v. State*, 48 Kan. App. 2d 490, 498-99, 293 P.3d 772 (2013) (discussing how counsel's responsibility to make tactical decisions withstands constitutional scrutiny in habeas action under K.S.A. 60-1507 only to the extent of how well informed those decisions were). As a result of Walsh's failure to properly advise her of the strength of the State's case, Llamas argues she did not knowingly and understandingly enter her plea. Accordingly, Llamas believes she established good cause to withdraw her plea.

The State responds that substantial evidence supports the district court's findings that Llamas made a tactical decision to enter a plea based on the advice of competent legal counsel after discussion and plea negotiations. In support, the State highlights Walsh's testimony and the district court's findings that despite Llamas' testimony to the contrary, she and Walsh had discussed suppression, including the propriety of the officer's initial contact with her. In so finding, the court acknowledged the testimony about the somewhat conflicting descriptions but stressed that it was not tasked with deciding the actual suppression issue. Rather, the court's focus was on Walsh's representation. In that regard, the court pointed out that Walsh had concluded after her

research and consultation with other attorneys that suppression was not a slam dunk. The court then found credible Walsh's belief that Llamas fully understood their discussions but simply "did not like what she was hearing." The State further notes the court also rejected Llamas' suggestion that her plea was not knowingly or understandingly made given the court's extensive colloquy with her prior to accepting her plea, which included confirmation that Llamas had sufficient time to discuss with Walsh the facts of her case and possible trial strategies, defenses, etc. In that regard, the court found "it appears from the nature of both Ms. Llamas's testimony and Ms. Walsh's testimony, that there was quite a bit of discussion, quite a bit of detail about where this case was headed."

The district court's extensive findings of fact and conclusions of law demonstrate that the court carefully weighed the evidence and assessed credibility contrary to Llamas' contention that Walsh's deficient representation presented her with good cause to withdraw her plea. Again, we cannot reassess credibility or weigh the evidence. Llamas has not met her burden of showing the district court abused its discretion in denying her motion.

Llamas also complains the calculation of her criminal history score violated her right to trial by a jury as discussed in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Llamas concedes we are duty bound to follow our Supreme Court's rejection of this same argument in *State v. Ivory*, 273 Kan. 44, 47-48, 41 P.3d 781 (2002). She raises it here solely to preserve the issue for federal review.

We can afford no relief to Llamas on this issue.

Affirmed.