IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,915

STATE OF KANSAS,
*Appellee*,

v.

TONY B. SCHAEFER,
*Appellant*.

SYLLABUS BY THE COURT

1.

A plea of guilty or nolo contendere (no contest), for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged.

2.

Three factors are commonly utilized as a starting point for the determination of whether a defendant has shown good cause to withdraw a plea, to-wit: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. But a court should not ignore other factors impacting a plea withdrawal that might exist in a particular case.

3.

A person seeking to withdraw a plea of guilty or no contest does not necessarily have to establish that his or her counsel provided unconstitutionally ineffective assistance of counsel.

1

4.

Where the facts of a particular case show no more than a remote possibility that the person entering a plea of guilty or no contest to a sexually violent offense will be involuntarily committed pursuant to the Kansas Sexually Violent Predator Act upon completion of the person's prison term, the failure of defense counsel to advise the person of that remote possibility does not, standing alone, establish counsel's representation as being ineffective for plea withdrawal purposes.

5.

Viewing all of the provisions of the Kansas Sexually Violent Predator Act as a whole reveals that the Act contemplates that the State must prove that a person actually committed the acts constituting a sexually violent offense before that person is subject to involuntary commitment as a sexually violent predator.

6.

A person's plea of guilty or no contest to a sexually violent offense enhances that person's exposure to a subsequent proceeding under the Kansas Sexually Violent Predator Act and such a plea prejudices the person's ability to defend against a Kansas Sexually Violent Predator Act petition. Nevertheless, if a person's knowledge of the potential for proceedings under the Act would not have changed that person's decision to plead guilty or no contest to a sexually violent offense, then the failure of the criminal defense counsel to provide the person with knowledge of the Act does not establish good cause for the withdrawal of the plea.

7.

As a general rule, an appellate court will give deference to a district court's ability to personally observe the proceedings below and will not overturn a trial court's weighing of the evidence or assessment of the witnesses' credibility based upon a cold record.

2

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 15, 2014. Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed December 23, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, argued the cause, and *Johnathan M. Grube*, of the same office, was on the brief for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Pursuant to an agreement that his attorney negotiated with the prosecutor, Tony B. Schaefer pled nolo contendere (no contest) to amended on-grid charges of rape and attempted rape. But prior to sentencing, Schaefer moved to withdraw his plea, arguing that the requisite good cause for withdrawal existed because his trial counsel had failed to advise him that his plea exposed him to possible involuntary civil commitment under the Kansas Sexually Violent Predator Act (KSVPA); his trial counsel and her law partner coerced him to accept the negotiated plea bargain; and his prescription drugs caused a faulty mental state that rendered ineffectual the colloquy with the judge at the plea hearing. Following a hearing, the district court denied the motion to withdraw plea and proceeded to sentencing. On appeal, the Court of Appeals affirmed. This court granted Schaefer's petition for review. We affirm the Court of Appeals and the district court, albeit we do not embrace all of the lower courts' reasoning.

FACTUAL AND PROCEDURAL OVERVIEW

In August 2010, the State filed a criminal complaint against Tony Schaefer, charging him with one count of rape of a child under 14 by an adult, in violation of K.S.A. 21-3502(a)(2). The State alleged that Schaefer had digitally penetrated the vagina of a friend's 13-year-old daughter and that, in an interview with the Topeka Police Department, he had admitted doing so. Schaefer moved to suppress inculpatory post-arrest statements he made, but, after a hearing, the district court denied the motion.

After the State amended the complaint to reduce the severity level of the rape count from an off-grid felony to a level 1 on-grid felony and to add an attempted rape count, Schaefer agreed to plead no contest to both counts. In his written agreement with the State, Schaefer acknowledged that his plea could subject him to sex offender registration, as well as imprisonment and postrelease supervision. The agreement did not mention the possibility of involuntary civil commitment under the KSVPA, following Schaefer's prison term. It did include Schaefer's assurance that he was not under the influence of any substances and that he was in a fit state of mind to enter the plea.

At the plea hearing, the district court conducted an extensive colloquy with Schaefer. It reviewed the changes in the amended complaint, the sentencing grid applicable to the charged offenses, the mandatory term of postrelease supervision, the potential sentences for the two counts, and the likelihood that the two sentences would run consecutive to one another. After the court observed that Schaefer had a minimal criminal history, defense counsel related that Schaefer had confirmed that he only had one prior misdemeanor and no out-of-state issues.

The court further advised, and Schaefer acknowledged, that he would be subject to sex offender registration for life. After advising Schaefer of the trial rights he would

surrender by pleading no contest, the court verified that he was currently in a fit mental state notwithstanding a prior head injury. Schaefer assured the court that he had read the plea agreement and reviewed it with his counsel; that he was not being coerced into entering the plea; that the written plea agreement was the entire agreement he had with the State; and that no other promise had induced him to plead no contest to the charges. After waiving a formal reading of the complaint, Schaefer signed the written plea agreement in open court and formally entered a no contest plea to both counts of the amended complaint. The district court found a sufficient factual basis to support the plea and adjudged Schaefer guilty on both counts.

Subsequently, but before sentencing, Schaefer's then-serving appointed attorney moved to withdraw as counsel, indicating that Schaefer had told her that he wished to withdraw his plea. The reason proffered for Schaefer's plea change was his assertion that, due to a change in medication, he was unable to remember counsel explaining the sentencing elements of his no contest plea. The district court granted the attorney's withdrawal motion.

Thereafter, replacement counsel moved to allow Schaefer to withdraw his no contest plea. Schaefer asserted that his plea hearing attorney pressured him to enter into the plea agreement and rushed him through the plea process just prior to trial with no time for him to review the entire agreement. He also argued that the portion of the plea agreement waiving any direct appeal and/or collateral attack was insufficient because it failed to advise him that ineffective assistance of counsel would be a ground to seek habeas corpus relief. Finally, he contended that his plea hearing attorney had failed to advise him that, due to a prior out-of-state sexual allegation involving a minor, he was subject to civil commitment under the KSVPA.

5

The State responded that Schaefer's claim that his plea had been rushed was belied by the fact that it was entered 1 and 1/2 years after he was charged and after he had received advice from five different appointed attorneys. The State also pointed to Schaefer's representations to the plea hearing judge that no one had pressured him into the agreement. Additionally, the State contended that any alleged defects in the appeal waiver provision of the written plea agreement would not invalidate the plea that Schaefer proffered in open court. Finally, the State argued that treatment under the KSVPA would only be a collateral consequence of the plea, so that being advised of that potential was not a prerequisite to entering the plea.

Further, the State asserted that merely being charged with a sexually violent offense was sufficient to subject a person to KSVPA proceedings. Therefore, the State argued, because the plea did not increase Schaefer's exposure to an involuntary commitment under the KSVPA, counsel's failure to advise Schaefer of the possibility of such commitment before the plea was not prejudicial.

Both Schaefer and his plea hearing attorney testified at the plea withdrawal hearing. Schaefer said that he was rushed to make a decision because of his impending trial; that he was coerced by his attorney and her husband/law partner to abandon his desire to go to trial; that, when he entered the plea agreement, he was confused, dizzy, and experiencing difficulty connecting thoughts because of his medication for a prior traumatic brain injury (TBI); and that he was unaware that he could face indefinite civil commitment under the KSVPA based on his pleading no contest to rape of a minor.

The plea hearing attorney described her interaction with Schaefer, including her advice that Schaefer should consider a plea agreement that would eliminate off-grid sentencing. The attorney related that Schaefer had rejected the first agreement she reached with the prosecutor because the length of the recommended sentence was too

6

long. After the attorney renegotiated the plea offer to shorten the recommended sentence by 1 year, Schaefer willingly accepted it. The attorney denied that either she or her husband had threatened Schaefer and noted that Schaefer appeared at all times to be in a right frame of mind to consider his options. With respect to the possibility of a KSVPA commitment, the attorney related that her file indicated that she had researched its applicability but that she did not believe she had discussed the KSVPA with Schaefer. She opined that she would not have felt the need to discuss the KSVPA with Schaefer because of his seeming lack of the requisite mental disorder to invoke that procedure. On the other hand, she denied making any affirmative representation to Schaefer that he would not be subject to the KSVPA.

The district court took the matter under advisement. Schaefer relied in part on *Padilla v. Kentucky*, 559 U.S. 356, 367-69, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), in which the United States Supreme Court held that a defense attorney's failure to advise his or her client that a conviction would lead to deportation was constitutionally deficient performance.

In a written order, the district court denied Schaefer's motion to withdraw plea, concluding that Schaefer was represented by competent counsel; that no credible evidence supported Schaefer's claim that his attorney and her husband/law partner pressured him to accept the plea agreement; that, despite any concerns about Schaefer's head injury, he had sufficient time to review and reflect on the plea agreement before entering into it; that Schaefer's plea was fairly and understandingly made; that his attorney's testimony regarding the attorney/client relationship was more credible than Schaefer's; that any errors in the appeal waiver provision of the written plea agreement did not invalidate the plea that Schaefer entered in open court; and that his attorney did not fail to advise Schaefer that his brain injury could be grounds for a diminished capacity defense.

With respect to the KSVPA issue, the district court found that the attorney had neither advised Schaefer of the possibility of involuntary commitment nor affirmatively asserted that the KSVPA did not apply to him; the KSVPA was simply not discussed between attorney and client. The district court distinguished *Padilla* as involving an automatic deportation for a noncitizen's drug offense convictions, whereas a KSVPA commitment was only a possibility that would require further findings. The district court pointed to the fact that the plea agreement recommended a sentence that was considerably shorter than the 25-to-life sentence Schaefer would have received if found guilty at trial under the original complaint and concluded that the result would not have been different if the attorney had advised her client of the KSVPA. Finally, the district court opined that Schaefer was not prejudiced by pleading to the charges without being notified about the KSVPA because his being charged with a sex offense had already exposed him to a KSVPA commitment under the provisions of that act.

Thereafter, the district court sentenced Schaefer to 155 months' imprisonment on the rape count, a consecutive 59 months on the attempted rape count, and lifetime postrelease supervision. The district court advised Schaefer that he had to register as a sex offender for 10 years after he was released.

Schaefer appealed. The Court of Appeals affirmed, albeit with one judge filing a concurring opinion. *State v. Schaefer*, No. 109,915, 2014 WL 4080152 (Kan. App. 2014) (unpublished opinion). We granted Schaefer's petition for review.

DENIAL OF MOTION TO WITHDRAW PLEA

Schaefer first contends that the district court erred in finding an absence of good cause to support his presentencing motion to withdraw his no contest plea. He argues that

8

his testimony established good cause for a number of reasons and that the district court failed to apply the correct legal standard in assessing the evidence.

*Standard of Review*

Generally, a district court's denial of a motion to withdraw a plea is reviewed for an abuse of discretion. *State v. Freeman*, 292 Kan. 24, 27, 253 P.3d 1 (2011) (quoting *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 [2008]). Judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward,* 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). The defendant bears the burden of demonstrating the abuse of discretion, but the district court's decision must have been based on a correct understanding of the law to receive the full deference of that review standard. *Freeman*, 292 Kan. at 27-28.

In Kansas, the withdrawal of a guilty or no contest plea is governed by statute, *i.e.*, K.S.A. 2015 Supp. 22-3210(d). Procedures under the KSVPA are likewise governed by statutory provisions, *i.e.*, K.S.A. 59-29a01 *et seq.* Accordingly, to the extent our decision turns on statutory interpretation, we are presented a question of law, subject to unlimited review. *State v. Eddy,* 299 Kan. 29, 32, 321 P.3d 12 (2014).

*Analysis*

We start our analysis of Schaefer's claim that he was denied his statutory right to withdraw his no contest plea by looking at the statutory language creating that right:

> "(d)(1) A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged.

9

"(2) To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2015 Supp. 22-3210(d)(1), (2).

As previously noted, Schaefer's motion to withdraw plea was filed, heard, and denied before his sentence was adjudged. Accordingly, his burden under the statute was to show good cause as to why he should be granted leave to withdraw his plea. He did not have to establish that a manifest injustice needed to be corrected.

Historically, Kansas courts reviewing the denial of plea withdrawal requests have relied heavily on an assessment of three factors, recently referred to as the *Edgar* factors after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), to-wit: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Aguilar,* 290 Kan. 506, 511-12, 231 P.3d 563 (2010) (discussing history of the three factors). But *Aguilar* clarified that, while the *Edgar* factors are "viable benchmarks for judicial discretion," a court should not ignore other factors that might exist in a particular case. *Aguilar*, 290 Kan. at 512-13; see also *State v. Anderson,* 291 Kan. 849, 856, 249 P.3d 425 (2011) ("The district court also may consider other factors when determining whether good cause is shown.").

Schaefer pays tribute to the *Edgar* factors by arguing that he was not competently represented because his attorney exerted undue pressure on him to accept the plea agreement, refusing to take "no" for his answer, and because the attorney failed to inform him that civil commitment under the KSVPA was a potential consequence of the plea. As a result, Schaefer claims to have been coerced and misled which would establish the second factor. Under the third factor, Schaefer contends that his plea could not have been

10

fairly and understandably made because he was not in the right frame of mind due to the effects of his TBI medications and the exhaustion his attorneys had induced.

But in addition, Schaefer contends that the district court erred by ignoring any factors other than the three *Edgar* factors, which *Aguilar* specifically disapproved. Consequently, Schaefer claims that the district court abused its discretion by applying an incorrect legal standard. We take the liberty of quickly disposing of this contention first.

*Correct Legal Standard*

As the Court of Appeals pointed out, the district court issued a thorough memorandum decision detailing its reasons for denying Schaefer's motion to withdraw plea. The court considered the points raised by Schaefer's testimony at the motion to withdraw hearing, albeit those assertions were considered against the backdrop of his attorney's testimony, as well as Schaefer's unequivocal statements at the plea hearing. The fact that the court made credibility determinations adverse to Schaefer does not mean that the court ignored factors germane to the issue of plea withdrawal. Moreover, the court considered the context in which the plea was made, including the significant reduction in recommended prison time resulting from the plea agreement. In short, the record on appeal belies Schaefer's claim that the district court applied an incorrect legal standard by ignoring relevant factors.

*Attorney Competence*

With respect to the competence of counsel, Schaefer complained that his attorney committed both an error of omission and an error of commission. The alleged omission was his attorney's failure to advise him that civil commitment under the KSVPA was a potential consequence of his plea. The alleged error of commission was coercing

11

Schaefer to accept a plea agreement when he had repeatedly said he wanted to go to trial. Schaefer points out that he does not have to prove that his attorney was unconstitutionally ineffective, but rather "[m]erely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea." *Aguilar*, 290 Kan. at 513.

The Court of Appeals majority rejected Schaefer's claim of omission, relying, in part, on *Bussell v. State,* 25 Kan. App. 2d 424, 963 P.2d 1250 (1998), *rev. denied* 266 Kan. 1107 (1998). *Schaefer*, 2014 WL 4080152, at *5. *Bussell* rejected a similar challenge to the denial of a postsentencing motion to withdraw plea, noting that a civil commitment under KSVPA is the product of a separate discretionary proceeding and determining that "[t]he uncertainty inherent in predicting whether the KSVPA will ever be invoked against defendant is such that the failure of his counsel to advise him of potential consequences cannot be said to be constitutionally deficient." 25 Kan. App. 2d at 428.

But the postsentence plea withdrawal in *Bussell* was statutorily limited to correcting a manifest injustice. Here, we are presented with a presentence plea withdrawal motion with a good cause standard that *Aguilar* clarified does not require a demonstration that the movant was denied his or her constitutional right to effective assistance of counsel. In other words, it is possible that, under some circumstances, the failure of counsel to advise his or her client of the possibility of commitment under the KSVPA before the client pleads to a sexually violent offense would constitute good cause for the client to withdraw his or her plea before sentencing, notwithstanding that counsel's performance could not be deemed constitutionally deficient.

Nevertheless, the panel makes a valid point. An involuntary commitment under the KSVPA is not an automatic consequence of a plea to a crime designated as a sexually

violent offense. First, to be a sexually violent predator subject to commitment, a person must not only commit a sexually violent offense, but he or she must "suffer[] from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 59-29a02(a). Obviously, not all persons convicted of a qualifying crime will receive the requisite diagnosis.

Then, a multidisciplinary team established by the secretary of corrections and a prosecutor's review committee appointed by the attorney general are charged with the task of assessing whether a person about to be released from custody meets the definition of a sexually violent predator under K.S.A. 59-29a02(a). K.S.A. 59-29a03. We do not know what percentage of ready-to-be-released sexual offenders the multidisciplinary team or the prosecutor's review committee assess as being eligible for KSVPA proceedings. But the applicable statute indicates that, after the prosecutor's review committee determines that a person meets the definition of a sexually violent predator, the attorney general "*may* file a petition" under the KSVPA, *i.e.*, has discretion not to seek involuntary commitment. (Emphasis added.) KS.A. 59-29a04(a).

Schaefer's attorney surmised that she had researched the KSVPA, based upon documents in the client file, but determined that Schaefer did not suffer from the requisite mental abnormality or personality disorder that would subject him to such a proceeding. Although Schaefer did not have to establish a violation of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, he at least had the burden to show that the potential consequence of which his attorney did not advise him was more than a remote possibility. He failed to do so.

Instead, Schaefer relied upon an argument that *Padilla*, decided after *Bussell*, stands for the proposition that criminal defense attorneys are not exempt from the duty to inform their clients of the collateral consequences of a plea simply because the

13

consequences are civil in nature. The panel majority rejected Schaefer's characterization of *Padilla*'s holding and noted the factual distinctions in that case. There, Padilla's attorney affirmatively told him that pleading guilty to drug trafficking would not affect his immigration status. To the contrary, deportation was a normal consequence of a drug conviction by noncitizens. Ultimately, the panel majority opined that *Padilla* should not be read to apply outside the unique area of deportation. *Schaefer*, 2014 WL 4080152, at *6.

The concurring opinion was loathe to strictly limit *Padilla*'s impact to cases in which deportation was the collateral consequence because of its reading of a later case, *Chaidez v. United States*, 568 U.S. ___, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013). *Schaefer*, 2014 WL 4080152, at *11 (Leben, J., concurring). Instead, the concurrence looked at the series of facts that led to the result in *Padilla*, *e.g.*, "deportation was a unique and severe penalty, it related directly to the criminal process, and immigration statutes made deportation '"nearly an automatic result"' of the conviction. 133 S. Ct. at 1110." 2014 WL 4080152, at *12. In comparison to the level of certainty of the consequence found in *Padilla*, the concurrence viewed the record in Schaefer's case as allowing the reviewing court "to do no more than speculate on possible future events that might—or might not—lead to involuntary-commitment proceedings." 2014 WL 4080152, at *13. While the concurrence was unwilling to rule out the possibility that a case may later present itself where the consequences are certain enough that the defense attorney is found to have a duty to tell the defendant about the KSVPA, it found that the current consensus is that speculative consequences, such as those presented here, do not trigger a duty to inform the client about them. 2014 WL 4080152, at *13.

We adopt the result reached by the Court of Appeals but agree with the concurrence that the holding should be narrowly tailored to the facts presented on this record. Here, those facts show no more than a remote possibility of a KSVPA proceeding

14

upon Schaefer's completion of his prison term. On the other hand, there is no need, at this point, to adopt a bright-line rule that a defense attorney never has a duty to advise his or her client of the KSVPA consequences of a plea to a sexually violent offense. On other facts, the probability of an involuntary commitment as a sexually violent predator for an indeterminate period of time may be high enough to create a duty for defense counsel to advise the client of that consequence, prior to the plea hearing.

*Was Defendant Misled or Coerced?*

Schaefer uses the same complaint—that his attorney failed to advise him of the KSVPA commitment possibility—to argue that he was misled into pleading no contest within the purview of the second *Edgar* factor. The panel majority found that this argument failed for essentially the same reasons as the ineffective assistance of counsel claim had failed. 2014 WL 4080152, at *7.

But the opinion went further, opining that simply being charged with a sexually violent offense subjects the person to involuntary commitment under the KSVPA. The panel majority looked at the isolated provision of the KSVPA that calls for notification to the multidisciplinary team and the attorney general when a person is found not guilty of a sexually violent offense due to mental disease or defect, K.S.A. 59-29a03(a)(4), and declared that Schaefer "could be subject to the KSVPA even if his case proceeded to trial and he was acquitted." 2014 WL 4080152, at *7. The apparent suggestion is that entering a plea to, and being found guilty beyond a reasonable doubt of, a sexually violent offense does not affect a person's ability to defend against involuntary commitment as a sexually violent predator. We disagree with that reading of the KSVPA.

Viewing the KSVPA as a whole, rather than isolating the words, "or charged," in K.S.A. 59-29a02(a), gives one a clear indication that the KSVPA contemplates that the

15

State must prove that a person actually committed the acts constituting a sexually violent offense before that person is subject to involuntary commitment as a sexually violent predator. For instance, the rest of the definition of sexually violent predator in K.S.A. 59-29a02(a) requires a finding that "the person [is] likely to engage in *repeat acts of sexual violence.*" (Emphasis added.) Of course, one can only repeat acts after having previously committed the acts.

The other provision cited by the panel majority, K.S.A. 59-29a03, speaks to the "agency with jurisdiction" giving notification to the attorney general and the multidisciplinary team that a person may meet the criteria of a sexually violent predator. The fact that an agency has jurisdiction over the person suggests a court-ordered custodial arrangement, either because the person has been convicted of a sexually violent offense or has been determined mentally incompetent to stand trial or to be convicted at trial. Pointedly, if a person charged with a sexually violent offense has been found incompetent to stand trial, he or she can still be subjected to KSVPA proceedings, but only after "the court shall first hear evidence and determine whether the person *did commit the act or acts charged.*" (Emphasis added.) K.S.A. 59-29a07(g). The manner in which that determination must be made compellingly refutes the notion that the legislature intended a person merely charged with a sexually violent offense or a person who has been acquitted of a sexually violent offense (excepting acquittals due to mental disease or defect under K.S.A. 22-3428) to be subject to involuntary commitment. The required procedure is as follows:

> "The hearing on this issue [of whether the person did commit the act or acts charged] must comply with all the procedures specified in this section. In addition, the rules of evidence applicable in criminal cases shall apply, and all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent, shall apply. After hearing evidence on this issue, the court shall make specific findings on whether the person did commit the act or acts charged, the extent to which the person's

16

incompetence or developmental disability affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on such person's own behalf, the extent to which the evidence could be reconstructed without the assistance of the person and the strength of the prosecution's case. If after the conclusion of the hearing on this issue, the court finds, *beyond a reasonable doubt*, that the person did commit the act or acts charged, the court shall enter a final order, appealable by the person, on that issue, and may proceed to consider whether the person should be committed pursuant to this section." (Emphasis added.) K.S.A. 59-29a07(g).

Given that the State must prove beyond a reasonable doubt that the person actually committed the act or acts charged, the person's plea in the criminal case takes the State one step closer to establishing the person as a sexually violent predator subject to involuntary commitment. In other words, the person's plea in the criminal case enhances that person's exposure to a subsequent proceeding under the KSVPA and such a plea prejudices the person's ability to defend against a KSVPA petition, contrary to the holdings of the district court and panel majority.

Nevertheless, the question here is whether the attorney's failure to advise Schaefer of the KSVPA provided good cause for Schaefer to withdraw his no contest plea to the sexually violent offenses. The district court's credibility finding dooms Schaefer's argument. The district court noted that the plea agreement resulted in a considerable reduction in the prison time Schaefer faced and opined that Schaefer's statement that he would not have pled, had he known about the KSVPA, was unbelievable. Accordingly, the district court found that if Schaefer had been notified of the potential exposure pursuant to the KSVPA, there would have been no difference in the outcome. We defer to the district court's weighing of evidence and assessment of credibility. See *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014) (appellate court will not reweigh evidence or credibility of witnesses), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 807-11, 375 P.3d 332 (2016). If knowledge of the KSVPA would not have

17

changed Schaefer's decision to plead, his attorney's failure to provide that knowledge is not good cause for the withdrawal of the plea.

The other argument Schaefer makes under the second *Edgar* factor is that his attorneys coerced him into accepting the plea agreement when all he wanted to do was go to trial. He supports that argument with his own testimony at the hearing on his motion to withdraw plea. On the other side of the ledger are Schaefer's responses to the district court's lengthy inquiry at the plea hearing; his attorney's testimony at the plea withdrawal hearing, including the fact that an initial plea agreement was renegotiated to effect Schaefer's demand for a shorter prison term recommendation; and the fact that the case had been pending for a year and a half with four prior attorneys representing Schaefer. The district court's "thorough review of the record as a whole" led it to find that "there is no credible evidence that the Defendant was misled, coerced, mistreated, or unfairly taken advantage of in changing his plea." Without reweighing the evidence or assessing witness credibility, we accept the district court's finding that Schaefer's plea change was not coerced by his attorney.

### *Were the Pleas Fairly and Understandingly Made?*

With respect to the third *Edgar* factor, Schaefer asserts that he was not in the right frame of mind when he entered his pleas because the side effects of the medications he was taking for his TBI "'affected his thinking process'" and because he was "'worn out'" from meeting with his attorneys regarding the plea agreement. He acknowledges that the district court found that it had given Schaefer every opportunity to tell the court that he was not in the right frame of mind at the plea hearing. But he argues that a person that is not in the right frame of mind cannot be expected to advise the court of that circumstance.

18

This issue highlights the purpose behind the general rule that appellate courts will not overturn a trial court's weighing of the evidence or assessment of witness credibility from a cold record. The district court noted that it was aware of Schaefer's TBI and had observed him during the proceedings in this case. Because of that knowledge, the district court began the plea hearing colloquy by inquiring as to Schaefer's state of mind. Thereafter, the district court carefully posed a dozen and a half questions, as recited in the Court of Appeals opinion, followed by a reading and signing of the written plea agreement in open court. The district court had the opportunity to view Schaefer's affect and body language and assess whether he was truthfully and unequivocally answering those questions. The inquiries touched on such matters as whether Schaefer was suffering from any mental health, educational, or substance abuse issues that would interfere with his ability to understand what was going on, his ability to talk with his attorney, or his ability to make his own decision and whether he was in the right frame of mind to make a major life decision. Then, at the hearing on the motion to withdraw plea, the district court could again observe Schaefer making his frame-of-mind statements and assess his sincerity, as compared to his earlier responses at the plea hearing.

After those observations, the district court declared that the evidence before the court was that "the Defendant understood the charges he faced; he understood the punishment he faced; he was in the right frame of mind to enter his pleas; and his pleas were voluntarily and knowingly made in open court." The record supports that declaration, and the Court of Appeals was correct in finding that the district court did not abuse its discretion by finding Schaefer's pleas were voluntary, knowing, and intelligent. In short, the third *Edgar* factor does not support Schaefer's claim of good cause to withdraw his plea.

Schaefer's petition for review also seeks review of the district court's holding that the failure of Schaefer's counsel to inform him about the possibility of a KSVPA involuntary commitment did not deprive Schaefer of his right to effective assistance of counsel. When presented with a claim that a defendant's constitutional right to counsel has been violated, we engage a two-part test:

> "The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.]

> "[Under the second prong of the test for ineffective assistance of counsel], the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]" *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 (2007).

As previously noted, the test for competent counsel when determining good cause to withdraw a plea is something less than the test to determine constitutionally effective assistance of counsel. Therefore, having determined that Schaefer failed to establish that his plea counsel's representation was incompetent under the *Edgar* factors, we can

summarily declare that he has also failed to establish an unconstitutional ineffective assistance of counsel.

But we would note here that the district court specifically found that Schaefer's lack of knowledge about the possible consequences of the KSVPA had no effect on the result, *i.e.*, he would have pled no contest to the amended charges even if he had known about the KSVPA. Given that his attorney's advice about the KSVPA would not have changed the result, Schaefer's claim about his attorney's error of omission cannot meet the prejudice prong of the ineffective assistance of counsel test.

Affirmed.