No. 95,249

STATE OF KANSAS, *Appellee*, v. SHANNON R. AGUILAR, *Appellant*.

(231 P.3d 563)

Opinion filed May 21, 2010.

*Carl A. Folsom, III*, of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Christopher L. Schneider*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

*Per Curiam*: Shannon Aguilar pleaded guilty to possession of cocaine in a constructive possession case. Before sentencing, she moved to withdraw her plea. She claimed, among other things, that her counsel had a conflict of interest because of his concurrent representation of Aguilar's codefendant. The trial court denied her motion, and the Court of Appeals affirmed. *State v. Aguilar*, 95,249 unpublished opinion filed February 16, 2007. This court granted Aguilar's petition for review.

### Factual and Procedural Background

Police in Kansas City, Kansas, pulled over a vehicle for the driver's failure to use a turn signal. The driver was Leona Ayalla; Aguilar was the only passenger. Ayalla was a close family friend whom Aguilar referred to as her "aunt." During the stop, the officers learned of an outstanding warrant for each woman and arrested both. An inventory search of the vehicle revealed three baggies of cocaine under Aguilar's passenger seat. While searching Ayalla, police found an additional two bags of cocaine and two bags of crystal methamphetamine inside her bra.

Ayalla was charged with possession of cocaine, possession of methamphetamine, and possession of a controlled substance without a tax stamp. Aguilar was charged only with possession of cocaine.

Both women retained Jeff Carlin as defense counsel. Carlin gave them a "deal," agreeing to handle both clients' criminal cases for $1,500 total if they both pleaded guilty, and for $3,000 total if they chose to go to trial. Three days before Aguilar entered her plea, Carlin filed a motion to withdraw from his representation of Aguilar. According to the motion, Aguilar had failed to pay the agreed attorney fees, which made it "impossible for movant to zealously represent Defendant as is ethically required of an attorney licensed to practice law in the State of Kansas."

Despite this motion, Carlin represented both women at their joint plea hearing 3 days later. There, Ayalla pleaded guilty to one count of possession of cocaine; the State dismissed all of the other charges against her. Aguilar also pleaded guilty to possession of cocaine, the only charge against her. The record contains no mention whatsoever of any discussion or disposition of Carlin's motion to withdraw. Aguilar signed a plea agreement, which indicated that she was represented by Carlin, that she was satisfied with the advice he had given her, and that the maximum punishment she faced was 42 months' imprisonment plus a $100,000 fine.

During the plea hearing, the court conducted a plea colloquy, confirming with Ayalla and Aguilar in succession that each had reviewed her plea agreement with Carlin and that neither defend-

ant had any complaints about his representation. Both women agreed that the State could present the evidence outlined by the prosecutor.

After questioning each codefendant, the court found that the women "voluntarily, knowingly, and understandingly waived their constitutional rights and enter[ed] their plea of guilty, that there's a factual basis for the plea, and that they understand the nature of the charges and the consequences of the pleas." At no point in the hearing, however, did the court inform Aguilar pursuant to K.S.A. 22-3210(a)(2) of the maximum punishment she faced for her crime.

Within days, Aguilar informed Carlin that she wished to withdraw her plea. At a previously scheduled sentencing hearing before a different district judge, Carlin informed the court of Aguilar's request. Because Aguilar now wished to "present to the court a conflicting defense" by withdrawing her plea, Carlin said he believed that he could not represent both defendants and requested to withdraw. The judge allowed Carlin to do so and appointed Craig Lubow to represent Aguilar. Per the State's request, the judge then reassigned the case to the judge who had taken Aguilar's original plea.

Approximately 3 weeks later, Lubow submitted a formal motion to withdraw Aguilar's plea. The motion claimed that she was not guilty of the crime charged, that she entered the plea under duress, and that she had ineffective assistance of counsel during the plea hearing and the negotiations leading to it. According to the motion, Aguilar "felt pressured to enter the plea" because "the codefendant is her 'aunt', although not biologically related." The motion also claimed Carlin had a conflict of interest because of his simultaneous representation of Aguilar and Ayalla. Included in this claim was an assertion that Carlin told Aguilar that a plea by both defendants would save Aguilar substantial legal fees she could not afford.

The court held a hearing on the motion to withdraw Aguilar's plea the same day. Lubow first advised the court that Aguilar had stated that she wanted to withdraw her plea ahead of sentencing before a different judge, and "it was sent back down here for you to consider that." The judge replied: "I have reviewed the motion."

Among other contentions presented at the hearing, Lubow argued that Aguilar "had ineffective assistance of counsel during the plea negotiations" because Carlin, "was representing the codefendant simultaneously, and there was a conflict of interest there." He cited *State v. Taylor*, 266 Kan. 967, 975 P.2d 1196 (1999), and *State v. Ryan*, 29 Kan. App. 2d 297, 26 P.3d 707, *rev. denied* 272 Kan. 1422 (2001). Lubow further argued that, "when the trial court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further," again citing *Taylor*. Because "the Court was aware that Jeff Carlin was representing two codefendants" at the plea hearing and because "there was no inquiry as to whether or not that created a conflict of interest," Lubow requested that Aguilar's plea be set aside. Lubow also told the judge that the drugs were Ayalla's, not Aguilar's, and that Aguilar had pleaded as charged, with no concession by the State. Lubow argued "that she did feel duress and was not wanting to do the plea at the time, but was pressured to do that, and would not have done that if she had separate counsel."

The State responded that the court had conducted the usual plea colloquy during the plea hearing and that Aguilar had said she was satisfied with Carlin's performance. The State also argued that there was no evidence of conflict of interest.

Aguilar provided brief testimony at the hearing after counsels' arguments. Among other things, Aguilar testified that she had felt financial and personal pressure to plead guilty as a result of her relationship with Ayalla and her inability to pay Carlin's higher trial fees: "$750 apiece *only* if we pled the same plea." (Emphasis added.) Aguilar suggested that she felt pressure because she believed a not guilty plea would lead to her charge being added to her aunt's charges. Ayalla was already in jail while Aguilar stayed with Ayalla's children. "I did not [have] any idea that she [Ayalla] was going to get all that stuff dropped, or I would not have pled guilty." On cross-examination, she acknowledged that she had told the court during the plea hearing that she thought Carlin's services were satisfactory.

Carlin did not testify, nor was he present at the hearing. The only explanation for his absence is found in the State's appellate brief, which states "there was not [an] opportunity to bring Mr. Carlin before the court" because Aguilar's written motion was not delivered to the State until the day of the hearing.

At the close of the plea withdrawal hearing, the judge ruled from the bench, denying Aguilar's motion to withdraw her plea saying:

"Ms. Aguilar, the dilemma the Court faces now is, I have to determine when you were telling the truth, were you telling me the truth in your responses on the day we took the plea, or are you telling the truth today. I have a hard time finding—really now, at this point, knowing when you were telling the truth. I spent thirteen pages and about 15 minutes going—asking you and your codefendant various questions about the plea. I had you under oath. You made what seemed to be appropriate responses and I thought, at the time, truthful responses; and frankly, at this time, I still think they were truthful. I think you—either because you don't want to do the [drug] treatment or you don't want to be on probation—I don't know what the reason is; but I think that the plea was voluntarily given—given without any threats, any promises. The fact that you say you're not guilty now, when you clearly stated to me that you were guilty, hasn't changed my mind. I don't think you were under duress. And—and fourth—the fourth reason, that Mr. Carlin gave you ineffective assistance of counsel—I've had Mr. Carlin in this courtroom a lot of times. I think he does a good job. And in addition to me going through this 15 minute recitation, Mr. Carlin also presented to me a plea petition, which he had gone over with you; and I asked you, 'Did you go over the plea petition?' In fact, I asked you if you had any questions concerning the plea petition, anything in there you didn't understand that you would like the court to explain to you; and you said no. So you had really two lengthy opportunities to tell the truth, if you weren't telling the truth. One was after Mr. Carlin asked you the questions and then when the Court asked them. So you're asking me to believe that you were not telling the truth on that day but you're telling the truth today. The Court is not going to accept that. And I don't—I don't feel, at this time, that a case has been presented to set aside the plea, and the plea will—the Motion to Withdraw Plea is considered and denied. That will be the order."

## ANALYSIS

The decision to grant or deny a motion to withdraw a guilty plea is governed by K.S.A. 22-3210(d):

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

K.S.A. 22-3210(d) sets forth two standards by which courts evaluate motions to withdraw pleas. Before sentencing, the courts have discretion to permit withdrawal of pleas if a defendant shows "good cause." After sentencing, the courts may permit a plea withdrawal only when the plea results in "manifest injustice." Because Aguilar moved to withdraw her guilty plea before sentencing, the district judge was required to determine in his discretion whether she demonstrated good cause for withdrawal. "[I]n order for the district court's decision to receive the full measure of that standard's deference, [that decision] must have been based upon a correct understanding of the law." *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008).

Our cases dealing with presentence and postsentence motions to withdraw have sometimes invoked and sometimes not invoked three factors to be considered: (1) whether the defendant was represented by competent counsel, (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made. Compare *Schow*, 287 Kan. at 542-43 (reciting three factors as standard for evaluating presentence motion); *State v. Green*, 283 Kan. 531, 546, 153 P.3d 1216 (2007) (reciting three factors as standard for evaluating postsentence motion); and *State v. Moses*, 280 Kan. 939, 950-55, 127 P.3d 330 (2006) (factors not mentioned in evaluating postsentence motion); *State v. Vasquez*, 272 Kan. 692, 36 P.3d 246 (2001) (factors not mentioned in evaluating presentence motion).

This court has recently referred to these three considerations as the *"Edgar* factors"—after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), in which this court applied these standards to evaluate a defendant's presentence motion to withdraw a plea. See *Schow*, 287 Kan. at 546. The factors long predate *Edgar*, however. In fact, they appear to have been based on this court's decision in *State v. Nichols*, 167 Kan. 565, 577, 207 P.2d 469 (1949), in which the court stated: "When the accused is represented by capable counsel and the plea is freely, fairly[,] and intelligently made, and its consequences understood, it should not be set aside. When some or all of these factors are lacking, common justice may au-

thorize or require the setting aside of the plea." *Nichols* was decided before the adoption of the modern code of criminal procedure, which sets forth the good cause and manifest injustice standards for motions to withdraw pleas. See *Vasquez*, 272 Kan. at 695; *Nichols*, 167 Kan. 565, Syl. ¶ 4 ("We have no statute specifically pertaining to motions to withdraw pleas of guilty in criminal cases. The matter is handled in each case upon principles of natural justice as applied to the facts of the case and the legal situation.").

Our previous inconsistent adherence to the *Edgar* factors to inform the standard for considering motions to withdraw pleas—regardless of whether the statutory language requires good cause or manifest injustice—has no doubt been confusing for practitioners and the district bench. In *Schow*, we finally and explicitly recognized the distinction drawn in the statutory language, characterizing good cause for presentence motions as a "lesser standard" for a defendant to meet, when compared to manifest injustice for a defendant advancing a postsentence motion. *Schow*, 287 Kan. at 541. This legislative choice is sensible and appropriate. The longer a defendant waits to file a plea withdrawal motion, the more the State's case is likely to weaken, if not evaporate. Certainly the plea withdrawal statute was not intended to be a tool for temporal manipulation; if a defendant is going to hold the State to its beyond-a-reasonable-doubt burden of proof before a jury, he or she should not be able to delay the process indefinitely by entering a guilty or nolo contendere plea and then easily withdrawing it when the timing is opportune.

At least one more clarifying step beyond *Schow* is necessary to decide this case.

The *Edgar* factors remain viable benchmarks for judicial discretion but reliance on them to the exclusion of other factors has not only conflated the good cause and manifest injustice standards of K.S.A. 22-3210(d) but also may have overemphasized the role of plea counsel's competence in deciding presentence plea withdrawal motions. Although the *Edgar* factors permit counsel's competence or lack thereof to be one consideration when the motion is filed in the time period between conviction and sentencing, they should not be mechanically applied to demand that a defendant

demonstrate ineffective assistance arising to the level of a violation of the Sixth Amendment. That level of proof may be suitable when the vehicle for relief is a K.S.A. 60-1507 motion attacking a defendant's *sentence*; and it may be logical and fair to equate the K.S.A. 22-3210(d) manifest injustice standard governing a post-sentence plea withdrawal motion to the high burden imposed on a constitutional claim of ineffective assistance. Compare *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *Boldridge v. State*, 289 Kan. 618, 215 P.3d 585 (2009) (referencing Kansas' use of *Strickland* standard of deficient performance plus prejudice); with *Mickens v. Taylor*, 535 U.S. 162, 168, 152 L. Ed. 2d 291, 122 S. Ct. 1237 (2002) (ineffective assistance based on conflict of interest requires showing of existence of conflict with actual effect on representation); *Boldridge*, 289 Kan. at 622-23 (employing *Mickens'* softened *Strickland* standard to K.S.A. 60-1507 motion alleging ineffective assistance based on conflict between defendant, counsel). We note, however, that the plain language of the statute—"for good cause shown *and within the discretion of the* court"—should not be ignored. A district court has no discretion to fail to remedy a constitutional violation.

It is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden. The *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet. Merely lackluster advocacy—or, as here, evidence of an insurmountable conflict of interest among jointly represented codefendants that is ignored by a district judge—may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea. All of the *Edgar* factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause.

Here, Aguilar sought to withdraw her plea in part on the basis that her attorney had a conflict of interest arising out of his concurrent representation of Aguilar's codefendant. At the plea hearing in this case, Carlin failed to address on the record his pending

motion to withdraw—based on Aguilar's failure to pay her share of Carlin's fees, which, the motion claimed, had made it "impossible" for him "to zealously represent" her—and its possible correlation to her guilty plea entered only 3 days later. Carlin also failed to put on the record anything concerning his disclosure of the danger of joint representation of two defendants in a constructive possession drug case or his clients' waivers of the conflict of interest. See *Mickens,* 535 U.S. at 175 (multiple representation is "inherently suspect"); *State v. Gleason,* 277 Kan. 624, 650, 88 P.3d 218 (2004) (same); see also ABA Standards Relating to the Defense Function, section 4-3.5(c), from ABA Standards for Criminal Justice: Prosecution Function and Defense Function (3d ed. 1993) (potential for conflict of interest in representing multiple defendants is so grave that ordinarily defense counsel should decline to act for more than one; exception when, after careful investigation, clear either that no conflict likely to develop at trial, sentencing, or any other time, or common representation will be advantageous). The district judge likewise failed to inquire at the plea hearing about Carlin's pending motion to withdraw over unpaid fees. It should have been evident to the district judge immediately from the colloquy with counsel and defendants that Carlin represented both women. It also should have been clear to the district judge that the case involved the constructive possession of illegal drugs and that Aguilar and Ayalla were the only occupants of the vehicle where the drugs were found. We observe that a number of courts have found these and similar circumstances created an actual conflict of interest. See, *e.g., McFarland v. Yukins,* 356 F.3d 688, 701-02 (6th Cir. 2004); *Williams v. Jones,* 391 F. Supp. 2d 603, 611 (E.D. Mich. 2005); *Fitzgerald v. United States,* 530 A.2d 1129, 1139 (D.C. App.. 1987); *State v. Ryan,* 29 Kan. App. 2d. 297, 26 P.3d 707, *rev. denied* 272 Kan. 1422 (2001). Indeed, we believe the conflict in such a situation to be not only actual but insurmountable. The fact that Ayalla received dismissal of additional charges while Aguilar pleaded guilty as charged intensifies our concern.

At least some of these problems in Aguilar's plea hearing had the potential to be corrected or ameliorated once she had been given new counsel. Unfortunately, this potential was not realized.

At the hearing on her motion to withdraw plea, there should have been no doubt whatsoever as to the main issue to be addressed: the conflict of interest between the codefendants in a constructive drug possession case and whether it warranted withdrawal of Aguilar's guilty plea for good cause shown. But the district judge exhibited no awareness of the governing legal standards. He gave no indication that he correctly applied those standards in this particular case. Instead of addressing the conflict of interest and its influence on the first of the *Edgar* factors, the court merely stated: "I've had Mr. Carlin in this courtroom a lot of times. I think he does a good job." This mere acquaintance with Carlin's earlier performances and the judge's awareness that Aguilar had reviewed the plea agreement with her counsel were not enough. The inequalities in Aguilar's and Ayalla's positions were ignored, as was the financial pressure placed on Aguilar by Carlin's package deal for her representation, good only as long as she remained joined at the hip to Ayalla.

The district judge's failure to apply the appropriate standards in the plea withdrawal hearing was an abuse of discretion requiring reversal and remand so that Aguilar may withdraw her plea and the State may pursue any additional proceedings it sees fit to pursue. Under the particularly egregious facts of this case—in which the conflict of interest between the defendant and her jointly represented codefendant was insurmountable, and the record reveals no sufficient disclosure by counsel and waiver by the client—Aguilar met her burden to show good cause to grant her presentence motion to withdraw her plea under K.S.A. 22-3210(d). No additional district court hearing on the motion is necessary.

Reversed and remanded.

\* \* \*

NUSS, J., dissenting: I respectfully dissent. More particularly, I disagree with the majority's dilution of the constitutional standard articulated in *Cuyler v. Sullivan*, 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980), and restated in *Mickens v. Taylor*, 535 U.S. 162, 152 L. Ed. 2d 291, 122 S. Ct. 1237 (2002), under the guise of "Kansas good cause" for withdrawing a plea.

In my view, we should allow Aguilar to make her own decisions. She has decided to file a motion to withdraw a guilty plea under K.S.A. 22-3210(d). She acknowledges that because she chose to file her motion before sentencing, the statute requires that she demonstrate good cause. She has chosen to establish the requisite good cause by emphasizing what the majority has identified as the "first *Edgar* factor": whether the defendant was represented by competent counsel. 290 Kan. at 511; see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

The majority concedes that Aguilar emphasized the incompetency of her counsel and, more specifically, that she focused on her counsel's purported conflict of interest arising out of his concurrent representation of Aguilar's codefendant. Indeed, the majority concludes: "At the hearing on her motion to withdraw plea, there should have been no doubt whatsoever as to the main issue to be addressed: the conflict of interest between the codefendants in a constructive drug possession case and whether it warranted withdrawal of Aguilar's guilty plea for good cause shown." 290 Kan. at 515. As a result, the majority devotes virtually all of its analysis to the conflict of interest claim.

The majority also correctly recites the applicable standard: ineffective assistance of counsel based upon conflict of interest requires the defendant to show that the conflict actually affected the adequacy of the representation. *Mickens v. Taylor*, 535 U.S. at 172-73; see also *Cuyler v. Sullivan*, 446 U.S. at 348-49. The majority further correctly indicates that this is a "softened," or lesser, standard than the one necessary for establishing ineffective assistance of counsel purely because of performance. See *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The latter standard requires showing that counsel's performance was deficient. More important, it also requires showing that the deficient performance "prejudiced" the defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687.

To this point, I am in agreement with the majority. I leave its company, however, when as a matter of law it refuses to require Aguilar to meet the specific standard articulated in *Mickens*, which

she and the State admit she must meet. The majority simply declares that "[i]t is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden [of *Mickens*]." 290 Kan. at 513. Apparently, "good cause" can mean that falling short of *Mickens*' standards is nevertheless "good enough."

One obvious problem with diluting a constitutional standard is determining just how close one must get to it in order to be good enough. Unfortunately, the majority provides us no guidelines for filling the void created by its removal of the *Mickens* standards. Moreover, when the United States Supreme Court first applied a constitutional standard to a defendant's request to withdraw a guilty plea based upon ineffective assistance of counsel, the Court warned that approving new grounds for setting aside guilty pleas represents "inroads on the concept of finality [which] undermines confidence in the integrity of our procedures." *Hill v. Lockhart*, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).

This particular issue—the appropriate standard for addressing a presentence plea withdrawal motion based upon ineffective assistance of counsel due to conflict of interest through concurrent representation—apparently has not yet arisen in Kansas appellate courts. However, a closely related issue has arisen: the appropriate standard for a presentence plea withdrawal based upon ineffective assistance of counsel due to conflict of interest but not because of concurrent representation. According to the majority, the constitutional standard articulated in *Mickens*, *e.g.*, a conflict actually affecting the adequacy of the representation, is somewhat in tension with Kansas' statutory standard of "good cause." As a result, under the majority's reasoning, these particular Kansas cases necessarily should also be analyzed under a similarly diluted "close enough to *Mickens*" standard. But they were not. Every defendant was required to meet *Mickens*.

In *State v. Whidden*, the Court of Appeals clearly applied the *Mickens* test to a presentence challenge to a guilty plea based on ineffective assistance of counsel due to personal conflict of interest. 2009 WL 1312568, at *3 (Kan. App. 2009) (unpublished opinion). In *State v. Adams*, this court apparently applied *Mickens* to the

claim of ineffective assistance of counsel due to conflict of interest because of successive representation. 284 Kan. 109, 118-125, 158 P.3d 977 (2007). Specifically, in holding that nothing in the record indicated that counsel's previous representation of a complaining witness "adversely affected" her performance in defending Adams, the court first cited *State v. Gleason*, 277 Kan. 624, 88 P.3d 218 (2004), an opinion in which we expressly applied the *Mickens* standard. *Adams*, 284 Kan. at 125 (citing *Gleason*, 277 Kan. at 649-52). As a result, the court concluded that Adams had not shown a conflict of interest that required setting aside his presentence nolo contendere plea. 284 Kan. at 125.

Another closely related issue has often arisen in Kansas appellate courts: the appropriate standard for a presentence plea withdrawal motion based upon ineffective assistance of counsel due purely to performance. According to the majority, the constitutional standards articulated in *Strickland, e.g.*, deficient performance resulting in actual prejudice to defendant, would be somewhat in conflict with Kansas' statutory standard of "good cause." As a result, under the majority's rationale, these particular cases necessarily should also be analyzed under a similarly diluted "close enough to *Strickland*" standard. But they were not. Every defendant was required to meet *Strickland*. See, *e.g., State v. White*, 289 Kan. 279, 285, 211 P.3d 805 (2009); *State v. Adams*, 284 Kan. 109, 124, 158 P.3d 977 (2007) (in addition to apparently applying *Mickens* to claim of ineffective assistance of counsel due to conflict of interest, clearly applied *Strickland* test to defendant's claim of ineffective assistance of counsel based upon performance); *State v. Sanchez-Cazares*, 276 Kan. 451, 457, 78 P.3d 55 (2003) (applying the *Strickland* test to a presentence motion to withdraw guilty plea based upon ineffective assistance of counsel); *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995) (same); *State v. Lewis*, 27 Kan. App. 2d 134, 138, 998 P.2d 1141 (2000) (same); *State v. Dunmore*, 2010 WL 445699, at *3 (Kan. App. 2010) (unpublished opinion) (same); *State v. Burrous*, 2007 WL 4374021, at *1 (Kan. App. 2007) (unpublished opinion) (same); *State v. Ortega*, 2007 WL 2080407, at *3 (Kan. App. 2007) (unpublished opinion) (same); *State v. Clark*, 2006 WL 2440007, at *3 (Kan. App. 2006) (unpublished opinion)

(same); *State v. Sosa*, 2006 WL 1976590, at *3 (Kan. App. 2006) (unpublished opinion) (same).

In short, the majority's dilution of the *Mickens* standard directly contradicts the longstanding practice of Kansas appellate courts of applying constitutional standards to resolve Sixth Amendment-based presentence motions to withdraw pleas. This dilution also conflicts with the practice, and case law, of many federal courts.

While the particular issue in the instant case has not yet arisen in Kansas, it has occurred in the federal courts. The case of *United States v. Verducci*, 384 F. Supp. 2d 495 (D. Mass. 2005), is on point. The *Verducci* defendant argued that the conflict created by his attorney's concurrent representation of himself and another was a basis for allowing withdrawal of his guilty plea before sentencing. The court addressed Federal Rule of Criminal Procedure 11(d). Similar to the presentencing good cause requirement of K.S.A. 22-3210(d), under the federal rule a defendant may withdraw a plea of guilty before sentence is imposed where "the defendant can show a fair and just reason for requesting the withdrawal." 384 F. Supp. 2d at 498; Fed. R. Crim. P. 11(d); see also *State v. Dillon*, 242 Kan. 410, 413, 748 P.2d 856 (1988) (noting similarities between 22-3210 and Rule 11). Under Rule 11(e), a guilty plea may be withdrawn after sentencing only on direct appeal or collateral attack.

The *Verducci* court did not dilute the *Mickens* standard in its search for "fair and just" reasons permitting presentence withdrawal of the plea. Rather, the court essentially applied the *Mickens* standard, holding that defendant had failed to show the concurrent representation placed him in a more disadvantageous position than he would have occupied had his attorney not represented the other at all. 384 F. Supp. 2d at 499-500. Indeed, it quoted *Mickens*, stating: " '[B]efore this court can presume prejudice to the defendant, he must first demonstrate that 'the conflict of interest actually affected the adequacy of his representation.' " 384 Supp. 2d at 500 n.2 (citing *Mickens*, 535 U.S. at 171).

Similarly, in *United States v. Cruz-Camacho*, the district court addressed defendant's presentence motion under Rule 11 to withdraw his plea due to ineffective assistance of counsel based upon

conflict of interest for concurrent representation of defendant and a potential prosecution witness. 682 F. Supp. 2d 193 (D.P.R. 2010). The court did not dilute any constitutional standards but expressly applied *Cuyler v. Sullivan* and denied the motion. It held that the defendant failed to show that any conflict actually affected his counsel's representation, *i.e.*, no fair and just reasons were established.

The case of *United States v. Berkeley*, 515 F. Supp. 2d 159, 162-65 (D.D.C. 2007), *aff'd* 567 F.3d 703 (D.C. Cir. 2009), is of particular importance. It not only clearly provides the rationale and standards used by the district court—like *Verducci* and *Cruz-Camacho*—but also the rationale and standards of the appellate court. There, the district court rejected defendant's presentence motion under Rule 11 to withdraw his plea due to ineffective assistance of counsel based upon conflict of interest after applying the *Cuyler* test. 515 F. Supp. 2d at 162-65. It also denied that part of the motion alleging ineffective assistance of counsel based upon pure performance after applying the *Strickland* test. 515 F. Supp. 2d at 162-65. The district court held that because defendant failed to meet these constitutional standards, no "fair and just reason" was established to warrant withdrawal of the plea. 515 F. Supp. 2d at 162-65. After applying the two different constitutional standards to the different bases for the motion, the circuit court of appeals affirmed. *United States v. Berkeley*, 567 F.3d 703, 708-10 (D.C. Cir. 2009).

*Berkeley* represents the typical approach of the federal circuit courts. They generally require the defendant to meet constitutional standards when they review on direct appeal a district court's denial of a Sixth Amendment-based presentence motion to withdraw plea. Specifically, they consider whether the *Strickland, Cuyler, Mickens,* or other constitutional standards are met. See, *e.g., United States v. Wallace*, 276 F.3d 360, 366-67 (7th Cir. 2002) (presentence motion to withdraw plea due to ineffective assistance of counsel based upon conflict of interest was denied by district court and affirmed by the appellate court because defendant had not met the *Cuyler* standards and therefore had no "fair and just reason" for withdrawal); *United States v. Taylor*, 139 F.3d 924, 930 (D.C. Cir.

1998) (Presentence motion to withdraw plea due to ineffective assistance of counsel based upon conflict of interest was denied by district court. Applying *Cuyler* in its consideration of "fair and just cause" for withdrawal, appellate court remanded for evidentiary hearing to determine if conflict of interest adversely affected performance.); *United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002) (Presentence motion to withdraw guilty plea due to ineffective assistance of counsel based upon conflict of interest was denied by district court. Appellate court affirmed denial because the defendant could not meet the requirements of *Mickens*.); *United States v. Bailey*, 49 Fed. Appx. 755, 756 (9th Cir. 2002) (Presentence motion to withdraw plea due to ineffective assistance of counsel based upon conflict of interest was denied by district court and affirmed by appellate court. Defendant did not meet the *Cuyler* and *Mickens* standards and therefore had no "fair and just reason" for withdrawal.); *cf. United States v. Davis*, 48 Fed. Appx. 809, 811 (2d Cir. 2002).

While some of these appellate decisions in the preceding paragraph do not clearly disclose the exact standards used by the district court, the following cases reveal the constitutional standards utilized by other district courts when reviewing presentence motions to withdraw plea for ineffective assistance of counsel, including for conflict of interest. See *United States v. Tolson*, 372 F. Supp. 2d 1, 12-14 (D.D.C. 2005) (addressing defendant's presentence motion under Rule 11 to withdraw plea due to ineffective assistance of counsel based upon conflict of interest using *Cuyler* test and ineffective assistance of counsel based upon performance using *Strickland* test); *United States v. Berger*, 188 F. Supp. 2d 307, 333-35 (S.D.N.Y. 2002) (same); *United States v. Rivera*, 1992 WL 135231, at *8-9 (E.D.N.Y. 1992) (unpublished opinion) (same).

Finally, I point to *United States v. Graham*, 2009 WL 902394 (D. Kan. 2009) (unpublished opinion). There, defendant sought to withdraw his guilty plea before sentencing primarily on the basis of the "fifth factor" that courts in the Tenth Circuit Court of Appeals consider when determining whether "fair and just reason" for withdrawal exists: whether close assistance of counsel was available to the defendant. 2009 WL 902394, at *3. Like the Kansas

appellate courts mentioned earlier that examined *Edgar's* similar "competence of counsel" factor and applied constitutional standards, the federal court applied *Strickland*. The court held that the *Strickland* standards had not been met and therefore denied the motion. 2009 WL 902394, at *3, *5.

In conclusion, I would follow the guidance, and practice, of Kansas appellate courts. For those defendants filing presentence motions to withdraw their pleas under K.S.A. 22-3210(d) that allege ineffective assistance of counsel due to conflict of interest through concurrent representation, I would require them to meet constitutional standards before concluding they had established "good cause" for withdrawal. This continuation is consistent with the approach of federal courts which operate under a similar requirement, Federal Rule of Criminal Procedure 11(d), for addressing presentence motions to withdraw pleas. In my view, applying anything less than "full strength" constitutional standards to a defendant's Constitution-based arguments creates problems.

MCFARLAND, C.J., and LUCKERT, J., join in the foregoing dissent. ∎