NOT DESIGNATED FOR PUBLICATION

No. 120,557

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROY ERWIN CEPHAS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed March 20, 2020. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Ashley R. Iverson*, assistant county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GREEN and WARNER, JJ.

PER CURIAM: In accordance with a plea agreement, Roy Cephas Jr. pleaded no contest to robbery. Before sentencing, Cephas moved to withdraw his plea. After a hearing, the trial court denied Cephas' motion. Cephas was sentenced to 122 months' imprisonment with 24 months' postrelease supervision. Cephas appeals the denial of his plea withdrawal motion. We affirm.

On July 9, 2017, the State charged Cephas with aggravated robbery, a severity level 3 felony, in Riley County. The purported victim was a minor, M.M. Kirby

Williamson was also charged by the State for her role in the same robbery. Cephas reached a plea agreement with the State on March 12, 2018. Cephas agreed to enter a guilty or no-contest plea to robbery, a severity level 5 felony. In return, the State agreed to the following: (1) that the low number in the sentencing grid box should be selected by the trial court; (2) that neither party would file any departure motions; (3) that jail credit be given for any time Cephas was held in custody; (4) that it would dismiss probation violation cases for three Riley County misdemeanor convictions; and (5) that any sentence for a probation violation in Geary County case No. 18CR55 would run concurrent to the sentence in this case. The parties agreed that Cephas' criminal history score would likely be A. Cephas also signed a waiver of rights with his plea agreement. As part of that waiver, he acknowledged he understood that "every three convictions or juvenile adjudications for either class A or class B person misdemeanors (or any combination thereof), shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes."

The trial court held a plea hearing on March 12, 2018. At the hearing, Brenda Jordan, Cephas' defense counsel, explained the plea agreement also contained an unattached third page containing a promise from the State not to pursue probation revocation in Geary County and to dismiss all charges. The trial court proceeded to ask Cephas about his decision to enter into the agreement. When asked, Cephas responded that he had an opportunity to review the plea agreement and discuss it fully with his attorney, Jordan. He stated that he agreed to each provision in the agreement. Cephas told the trial court he had a chance to review the sentencing grid and agreed his criminal history score would be A. Cephas understood he was waiving his constitutional rights to trial and to present a defense by entering into the plea agreement. Cephas also understood the possible penalties for a severity level 5 person felony. Cephas stated there was no other promise or inducement outside of the plea agreement to persuade him to enter a plea of guilty or no contest.

2

The trial court asked Cephas: "Are you telling the court that you're entering this plea freely, voluntarily, and of your own free will?" Cephas responded, "Yes, Your Honor." Cephas told the trial court that he was satisfied with Jordan's representation in this case. Cephas pled no contest to one count of robbery. The trial court accepted his plea and found him guilty.

Cephas was scheduled to be sentenced on April 23, 2018, but he failed to appear. He was arrested on June 4 and sentencing was rescheduled for June 25 2018. At that hearing, Jordan asked the trial court to allow her to withdraw because Cephas wished to raise issues with Jordan's representation of him. The trial court allowed Jordan to withdraw.

On September 14, 2018, Cephas wrote a pro se letter to the judge asking to withdraw his plea. On September 27, his new attorney filed a plea withdrawal motion. In the motion, Cephas asserted that he was not represented by competent counsel; he was misled; and his plea was not fairly and understandingly made. Cephas stated he was not on probation in Geary County in case No. 18CR55 as the agreement stated. Cephas asserted that K.S.A. 2018 Supp. 21-6606(c) would require any sentences imposed in Geary County to run consecutive to a sentence in this case, which meant the State offered Cephas a benefit he could not receive. Cephas also maintained he was misled into believing the controlling sentence in his three Riley County misdemeanor cases was 24 months' imprisonment instead of 12. Cephas contended that Jordan withheld material evidence regarding Williamson's testimony and plea deal and M.M.'s video interview with the police. The State filed a response, refuting Cephas' contentions.

The trial court held a plea withdrawal hearing on October 9, 2018. Cephas testified on his own behalf. Cephas testified that he was unaware that the three Riley County misdemeanors would raise his criminal history score to A. Cephas admitted Jordan did not provide him with that information when he entered a plea to those cases. Also,

3

Cephas was not on probation in 18CR55 as the plea agreement suggested, but the case was pending. He was on probation in two other Geary County cases. Cephas believed the plea agreement meant he would remain on probation but not be revoked. Cephas testified that he requested to view the video evidence, but Jordan never provided it to him. He also asserted that Jordan led him to believe that his potential sentence in the three Riley County misdemeanor cases was 24 months. While Cephas admitted Jordan told him that Williamson, his codefendant, would testify against him at trial, Cephas maintained that he was unaware that Williamson had provided an updated statement to law enforcement. Jordan also told him that the State would recommend probation for Williamson in exchange for her testimony. Cephas later testified that he was not aware of any audio or visual evidence that he could review. Cephas testified that he never saw any e-mails or a written agreement from Geary County indicating what it would do in return for his plea in this case.

On cross-examination, Cephas admitted that he knew his criminal history score was an A when he entered into the plea agreement. Cephas acknowledged his cases in Geary County were dismissed following his plea.

The State called Jordan to testify. Jordan testified that, when discussing the plea deal in the three Riley County misdemeanor cases, she told Cephas that any three person misdemeanors would convert to a person felony for criminal history purposes. Jordan explained that she told Cephas he faced a 12-month sentence in Riley County for the probation violations and described her note that she used to explain that to him. On March 11, 2018, Cephas told Jordan that he did not want to accept the plea agreement. At his pretrial hearing on March 12, 2018 Cephas asked to speak with his parents and, after talking to them on the phone, he decided to accept the plea agreement. Jordan testified that she spoke with the Geary County Attorney, who agreed to dismiss all cases against Cephas. Jordan stated that she understood that Williamson testified under oath in her own preliminary hearing and implicated Cephas in the robbery. Williamson was always listed

as a witness on the criminal complaint. Jordan furnished Cephas with all of the written reports in this case, including M.M.'s statement to the police, but he never asked to view the video of M.M.'s interview. Jordan testified that the video was consistent with the reports provided to Cephas.

The trial court considered the *Edgar* factors to determine if good cause existed to allow Cephas to withdraw his plea. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The trial court found Cephas knew his criminal history score was A and he knew that pleading to three class of A or class B misdemeanor crimes (or combination of it) would raise his score to that level. The trial court also found Cephas was aware of his pending cases in Geary County. The trial court found that Jordan was a competent attorney and Cephas was represented by competent counsel. The trial court pointed out that Jordan's testimony was credible regarding Cephas' request to watch M.M.'s video. And the trial court also found that Jordan told him the sentence for the three probation revocations was 12 months, not 24, and found that Cephas' testimony regarding those issues was not credible. The trial court noted that Cephas admitted that he knew Williamson would testify against him and that he knew about her plea deal with the State. The trial court ruled then that there was no good cause shown to allow Cephas to withdraw his plea. So, the trial court denied Cephas' motion to withdraw his plea.

Immediately following its decision, the trial court proceeded to sentencing. The trial court sentenced Cephas to 122 months' imprisonment with 24 months' postrelease supervision.

Cephas timely appeals.

5

*Did the Trial Court Abuse Its Discretion When It Denied Cephas' Motion to Withdraw His Plea?*

Cephas' sole issue on appeal is whether the trial court abused its discretion when it denied his plea withdrawal motion. Cephas asserts that his plea was not fairly and understandingly made because Jordan did not show him the video of M.M.'s police interview or tell him of Williamson's intent to testify against him at trial. Cephas also argues that he was misled because Jordan told him he would serve 24 months' imprisonment instead of 12 for his Riley County probation violations. Moreover, he contends that he was not aware that his plea in those three Riley County misdemeanor cases would raise his criminal history score to A. The State responds that the trial court found that Cephas knew his criminal history score and that Cephas testified he was aware of Williamson's plea agreement and testimony. The State also argues that Cephas was aware of the potential sentences of his various pending criminal cases and he received a favorable outcome in all of those cases because of his plea agreement.

*Standard of Review*

An appellate court reviews a trial court's denial of a motion to withdraw a plea, and the underlying determination that the defendant did not show good cause, for abuse of discretion. Abuse of discretion exists when the trial court's action: (1) is one where no reasonable person would take the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact. The party seeking to withdraw the plea bears the burden to establish an abuse of discretion existed. When reviewing for abuse of discretion, appellate courts do not reweigh evidence or assess witness credibility. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

*Analysis*

A defendant may withdraw a guilty or no-contest plea before sentencing "for good cause shown and within the discretion of the court." K.S.A. 2018 Supp. 22-3210(d)(1). Good cause is "'[a] legally sufficient reason.'" *In re Guardianship & Conservatorship of Burrell*, 52 Kan. App. 2d 410, 414, 367 P.3d 318 (2016) (quoting Black's Law Dictionary 266 [10th ed. 2014]). Good cause is a lesser standard for a defendant to meet compared to the manifest injustice standard required for a postsentencing motion to withdraw. *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 (2010).

In determining if good cause exists, courts will draw guidance from the three *Edgar* factors: (1) was the defendant represented by competent counsel; (2) was the defendant misled, coerced, mistreated, or unfairly taken advantage of; and (3) was the plea fairly and understandingly made? *Woodring*, 309 Kan. at 381 (quoting *Edgar*, 281 Kan. at 36). Not every *Edgar* factor needs to weigh in the defendant's favor in every case, and courts may consider other factors to determine the existence of good cause. *Woodring*, 309 Kan. at 381. Courts should not exclusively rely on the *Edgar* factors because doing so would "transform the lower good cause standard of the statute's plain language into a constitutional gauntlet." *Aguilar*, 290 Kan. at 513. A mere "change of mind" by the defendant is not sufficient to withdraw a plea without any evidence that the defendant can satisfy the *Edgar* factors. *Woodring*, 309 Kan. at 384.

Here, Cephas primarily makes two arguments: (1) his plea was not fairly and understandingly made and (2) he was misled. Cephas briefly argues that his counsel was not competent. Though listed as the first *Edgar* factor, Cephas' competency argument is resolved by his two primary arguments and, thus, will be discussed last.

A.    *Cephas' plea was fairly and understandingly made*

Before a trial court can accept a no-contest plea, the court must address the defendant personally and determine whether the plea was voluntarily made and the

7

defendant understood the nature of the charge and the consequences of the plea. K.S.A. 2018 Supp. 22-3210(a)(3). Defense counsel has the duty to advise a defendant about the range of potential penalties and discuss the possible choices available to the defendant to ensure a plea is voluntarily and intelligently made. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Cephas argues that his plea was not fairly and understandingly made for two reasons. First, Jordan did not provide Cephas with the video of M.M.'s police interview when he asked. Cephas contends that he would have gone to trial because the video was inconsistent with the testimony of M.M. and others at the preliminary hearing. Second, Cephas asserts that he was not aware of Williamson's plea deal or her intention to testify against him at his trial. Cephas argues that he could not make an intelligent, informed decision without knowing what Williamson might testify to at trial.

1.      *M.M.'s video interview*

At his plea withdrawal hearing, Cephas testified that he asked to view the video of M.M.'s police interview. According to Cephas, despite his request, Jordan never furnished him with this video.

Jordan's testimony differed from Cephas' testimony. Jordan provided Cephas with all of the paper discovery that she had, including summaries of M.M.'s police interview and any statements M.M. made to the police. Jordan testified that Cephas never asked to view the video. According to Jordan, M.M.'s video interview was consistent with his testimony at the preliminary hearing.

After hearing the testimony from Cephas and Jordan, the trial court found Jordan's testimony regarding the video was more credible than Cephas' testimony. In his brief, Cephas does not address the trial court's finding but uses his testimony—which the trial

court found not credible—to support his argument that his plea was not fairly and understandingly made. This argument is hampered by the trial court's findings. As stated earlier, when applying the abuse of discretion standard, an appellate court does not reweigh evidence or assess witness credibility. We defer to the trial court's factual findings in these matters. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Here, Cephas has failed to show that the trial court's determination that Jordan's testimony was more credible than Cephas's testimony regarding M.M.'s video interview was an abuse of discretion. Thus, Cephas' argument fails.

2.      *Williamson's testimony*

Cephas also contends that his plea was not fairly and understandingly made because he was unaware of his codefendant Williamson's plea deal or that she agreed to testify against him at trial. Williamson's testimony was not included in Cephas' plea agreement. At his plea withdrawal hearing, Cephas admitted that Jordan told him Williamson would testify against him at trial. Cephas also knew from Jordan that the State would recommend probation for Williamson in exchange for her testimony. When asked by the State if the trial court could write "wrong" next to the allegation in Cephas' motion that Cephas did not know what benefit Williamson would receive, Cephas replied, "Yes."

Cephas' own testimony contradicts his argument here. Cephas knew Williamson would testify against him, and he knew the State would recommend that Williamson receive probation in exchange for her testimony. So, a reasonable person could take the view of the trial court.

Cephas' arguments that his plea was not fairly and understandingly made are not supported by evidence before the trial court. The trial court did not abuse its discretion in finding Cephas failed to show good cause existed to withdraw his plea.

9

B.      *Cephas was not misled into entering into his plea agreement*

Cephas also argues good cause existed to withdraw his plea because he was misled into accepting the plea agreement. Cephas provides three reasons to support his claim. First, Cephas asserts Jordan told him he was facing 24 months' imprisonment if his probation was revoked in the three Riley County misdemeanor cases. Second, he was not aware when he made his current plea that his prior pleas in the three Riley County misdemeanor cases would increase his criminal history score to an A. Third, it was not clear before or during the plea hearing what benefits Cephas would receive from Geary County in exchange for this plea in Riley County.

1.      *12 months or 24 months*

Cephas testified that Jordan told him the controlling sentence for his three Riley County misdemeanor probation violations was 24 months' imprisonment when, in reality, it was 12 months. Cephas testified that when he arrived at court, Jordan pulled him into the judge's conference room and told him to either take the plea deal or be sentenced to 24 months' imprisonment for the probation revocations.

As Cephas acknowledges in his brief, Jordan testified that she told him he was facing 12 months' imprisonment, not 24. Jordan supported her testimony by describing her note where she wrote down the pending charges against Cephas and their corresponding sentences. Jordan underlined "12 months" next to the case numbers for the Riley County misdemeanors.

Cephas argues that while "12 months" is underlined, "[t]his note does not establish or make clear that the total sentence in the three Riley county misdemeanor cases was 12 months, rather than 24, or that Ms. Jordan accurately communicated it to Mr. Cephas."

10

After hearing all of the testimony, the trial court credited Jordan's testimony. Appellate courts do not reweigh the evidence or reassess witness credibility. *Woodring*, 309 Kan. at 380.

The trial court's crediting of Jordan's testimony supports its determination that Cephas was aware of the sentence he was facing in the three Riley County misdemeanor cases and that there was no good cause to withdraw his plea.

2. *Criminal history score*

Cephas also argues he was misled about his criminal history score being an A. While Cephas admits he knew his score was an A, he argues that he was misled because he did not realize his A score was a result of his pleas in the three Riley County misdemeanors, in which Jordan also represented him.

Jordan testified that she told Cephas that pleading to the three Riley County misdemeanor crimes would combine to become a felony and increase his criminal history to the A category. Additionally, Cephas' waiver of rights that accompanied his plea agreement stated he understood that every three misdemeanor convictions convert into a felony for criminal history purposes. The trial court credited Jordan's testimony and found it was clear that Cephas realized that his pleading to three misdemeanors would increase his criminal history score to an A.

There is no dispute Cephas was aware that his criminal history score was an A. His complaint is that he did not know his pleas in the Riley County misdemeanor cases would raise his score to an A. That complaint is best suited for those cases, not this current one. Cephas was aware of his criminal history score when he entered into the plea agreement. The plea agreement stated his likely criminal history score was an A. At the

11

plea hearing, the trial court inquired if Cephas understood his criminal history score was likely an A, and Cephas responded, "Yes."

Even if Cephas was not aware that his plea in the three Riley County misdemeanor cases converted his criminal history score to an A, his claim that he did not know why it was an A is not sufficient to constitute good cause to withdraw his plea. Thus, a reasonable person could agree with the trial court's findings.

3.    *Geary County cases*

Finally, Cephas argues that he was misled because Jordan was not sure what Cephas had pleaded to—or if he had even entered a plea—in Geary County. Cephas stresses the fact that the plea called for the sentence in a Geary County case for which he was already on probation to run concurrent with the sentence in this case, but, in fact, Cephas had not been convicted in that case.

When he made his plea in this case, Cephas had charges pending in Geary County in 18CR55. The plea agreement stated he was on probation in that case, and the State agreed to recommend that any sentence in that case run concurrent with the sentence in this case.

Jordan testified that she was not sure about the exact charges Cephas was facing in Geary County because his attorney there never responded to her inquiries. But Jordan reached an agreement with the Geary County Attorney to dismiss or terminate any pending actions against Cephas if he accepted the plea offer in this case. Her testimony was consistent with her statements at the plea hearing. At the plea hearing, in the presence of Cephas, she told the trial court that Geary County agreed not to pursue probation revocation and to dismiss any charges against Cephas. Once Cephas pleaded no contest, Jordan reached out to the county attorney, and the county attorney terminated

Cephas' probation in 17CR7 and 17CR258. And the State dismissed the Geary County charges in 18CR55.

The plea agreement did erroneously state that Cephas was on probation in Geary County case 18CR55. There was no conviction yet in that case. The agreement provided that the State would recommend any sentence in 18CR55 to run concurrent with the sentence in this case. Following Cephas' plea, Jordan was able to get the charges in 18CR55 dismissed. Though not the exact result Cephas bargained for in the plea agreement, it had much the same effect—Cephas would not serve any additional time beyond his sentence in this case.

In short, we acknowledge that the resolution of the cases in Geary County did not provide Cephas exactly what he had bargained for. Nevertheless, Cephas fails to show that the trial court abused its discretion in finding no good cause existed. For example, Cephas received a better benefit of his bargain than what he would have received under his plea agreement. Indeed, because Jordan worked out a deal to have the charges dismissed, Cephas avoided having to plead guilty to the charges in 18CR55 to get the same result he angled for under his plea agreement. So, a reasonable person could agree with the trial court that Cephas received the benefit he wanted from the plea agreement.

Cephas fails to show he was misled into entering the plea agreement. Cephas was aware that his potential sentence in the Riley County misdemeanor cases was 12 months. He knew the Riley County misdemeanor convictions raised him to an A criminal history score. And Cephas was aware of his pending cases in Geary County, and his plea resulted in a favorable disposition of those cases. The trial court did not abuse its discretion in finding good cause did not exist for Cephas to withdraw his plea.

13

C.    *Competency of counsel*

Cephas briefly argues that the issue of his criminal history score also implicates the competency of his counsel. For the same reasons why Cephas does not prevail in his argument that he was misled, he does not prevail in this argument.

Competency of counsel, as used in the first *Edgar* factor, does not require the defendant to show ineffective assistance of counsel to the level of a violation of the Sixth Amendment to the United States Constitution. *Aguilar*, 290 Kan. at 512-13. "[L]ackluster advocacy" may be enough to support the first *Edgar* factor. 290 Kan. at 513.

The trial court credited Jordan's testimony that she told Cephas when he pleaded in the three Riley County misdemeanor cases, those convictions would raise his criminal history score to an A. Cephas was aware his criminal history score was an A. The trial court found that Cephas had been represented by competent counsel. Nothing in the record suggests the trial court was unreasonable in reaching that conclusion. Cephas was well aware of his criminal history. Jordan actively worked, at Cephas' direction, to secure a favorable plea deal—securing not only an agreement from the State to recommend the low sentence of a level 5 felony instead of a level 3 felony, but also disposing of three probation revocation charges in Riley County, the discharge of two probation sentences in Geary County, and  dismissal of a pending charge in Geary County. Thus, the trial court did not abuse its discretion in finding Jordan provided competent counsel to Cephas. As a result, we affirm the trial court.

Affirmed.