NOT DESIGNATED FOR PUBLICATION

No. 123,871

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GREGORY THOMAS GOAD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed March 18, 2022.
Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before HILL, P.J., POWELL and CLINE, JJ.

PER CURIAM: Gregory Thomas Goad appeals the district court's denial of his
motion to withdraw his plea. After reviewing the record, we find the district court did not
abuse its discretion when it found Goad failed to show good cause to withdraw his plea.
We affirm the district court's denial of Goad's motion.

*Goad's Plea Agreement and Sentencing*

In February 2020, the State charged Goad with 31 counts encompassing various crimes. After the State amended these charges, Goad stood accused of two counts of rape, two counts of aggravated criminal sodomy, four counts of kidnapping, six counts of aggravated domestic battery, seven counts of domestic battery, five counts of criminal threat, one count of aggravated assault, one count of criminal restraint, one count of aggravated battery, and one count of criminal damage to property.

On August 28, 2020, Goad told the district court he intended to plead guilty to two counts of aggravated domestic battery and two counts of attempted kidnapping under a plea agreement reached with the State. In exchange, the State agreed to dismiss the remaining charges. Before the district court accepted his plea, Goad confirmed that he had read and gone over the terms of his plea agreement with his attorney, he understood those terms, and he was satisfied with the performance of his attorney. Goad also confirmed he knew he was waiving his right to appeal as part of his plea agreement.

On October 23, 2020, the district court sentenced Goad to 186 months in prison with 24 months' postrelease supervision. The district court did not complete sentencing at that time, setting a separate hearing to decide the issues of restitution and credit for time served.

At the October 23 hearing, Goad told the district court he had learned new facts about his case since pleading guilty and implied that he was being unjustly treated. Goad's attorney then told the district court that he and Goad had discussed the possibility of moving to withdraw Goad's plea, but Goad had decided not to do so. Goad confirmed that he did not want to withdraw his plea. He said he "just wanted to maintain [his] right to appeal" since he claimed he was not made aware that he would lose his appeal rights by pleading guilty. When pressed by the district court, Goad acknowledged that he knew

waiver of his appeal rights was part of the plea agreement and again declined when the judge asked him if he wanted to withdraw his plea. He stated that although he was aware when he pleaded guilty that giving up his appeal rights was part of his plea agreement, he had thought about it more since then and concluded there was something suspicious about the inclusion of the term.

*Goad's Motion to Withdraw his Plea*

Six days later, Goad reversed course and moved pro se to withdraw his plea, claiming his attorney "failed to explain several things that have become obvious after the fact." The district court allowed Goad's attorney to withdraw and appointed a new attorney to represent Goad. To support his motion, Goad claimed his trial attorney's poor performance prevented him from having "a complete and full understanding of the facts." Goad also argued that his trial attorney's deficient performance gave him little confidence in his prospects at trial and "caused him to enter a guilty plea that he regrets."

Goad enumerated several alleged deficiencies in his attorney's performance, most of which addressed his claims that his attorney failed to properly investigate the allegations against him. Goad also faulted his attorney's performance at the preliminary hearing and claimed his attorney failed to properly explain various legal issues in the case to Goad.

The district court held an evidentiary hearing on Goad's motion and on the issue of restitution in February 2021. Both Goad and his trial attorney testified. Goad largely repeated the allegations made in his motion and supporting brief. He testified he learned important information after he pleaded guilty, which would have changed his decision to plead guilty if he had known this information beforehand. But he later admitted his mother provided him this information before he accepted the plea deal.

Goad also said he wanted his attorney to ask more questions during the preliminary hearing, and the preliminary hearing did not make him confident with his prospects for acquittal. And he said his attorney never went over legal terminology with him, and they never discussed the difference between a guilty plea and a no-contest plea. Goad explained that he had gone through the plea process several times in other cases, and he had always taken a guilty plea if offered a lower sentence. He said he never understood the difference between a guilty and no-contest plea, but had he known the difference, he would not have pleaded guilty.

Goad did not now believe that his choice to plead was free and voluntary because he said when he made the choice he was overridden with anxiety. He stated that although he felt at the time that pleading guilty was the best thing to do, he changed his mind once he got back to his cell.

Goad's trial attorney testified he met with Goad nine times between March 2020 and July 29, 2020, to discuss the allegations against Goad and the evidence in the case. He described his efforts to investigate the allegations and pursue the information and potential leads Goad provided. He testified about additional investigative efforts he had intended to pursue, but said Goad decided to take the plea deal before that happened.

As for Goad's allegation that he failed to aggressively cross-examine witnesses during the preliminary hearing, Goad's attorney testified that his strategy was to use that hearing to nail down the testimony of the officers and victim. He then planned to cross-examine each witness more forcefully during the trial, using the preliminary hearing testimony to impeach them if they changed their stories under pressure.

He also testified that he met with Goad extensively to discuss the important issues in the case. He said he always tried to avoid using legal jargon, or if he happened to do so, to explain the terms to Goad. He also stated that Goad was often uncooperative during

4

their meetings, refusing to discuss his case when the facts did not line up with his version of the events.

Goad's trial counsel admitted he never discussed with Goad whether he wanted to enter a guilty plea or a plea of no contest, or whether it was important that he retain his appeal rights. He explained that Goad never expressed any concern with either issue when discussing the terms of the State's plea offer and that Goad's focus was always the length of the sentence. He stated that the State did not offer the option of pleading no contest, which he assumed was done to appease the victim. He did not think to suggest that they should hold out for a no-contest plea because it would not make any difference in terms of the substantive outcome and Goad's only concern seemed to be the length of the sentence.

Goad's plea negotiations lasted over a month, ending with a mediation. His trial attorney said he allowed Goad to speak with the mediator at length. He testified after speaking with the mediator, Goad called his mother. After this call, Goad said he wanted to take the plea deal. Goad's trial attorney then went over the terms of the plea deal with Goad and read him the tender of plea before Goad signed it. He answered Goad's questions and had Goad acknowledge that he understood each paragraph of the tender as he read through it.

Finally, Goad's attorney discussed his conversations with Goad about Goad's concerns with his plea. He said when he met with Goad before the sentencing hearing, Goad seemed to have "buyer's remorse. That he had pled and then decided maybe he didn't want to do that." Goad's trial attorney told Goad that if he wanted to file a motion to withdraw his plea, he could do so, but that "now [was] the time to do it."

The district court issued a memorandum decision on Goad's motion to withdraw his plea. The district court began by acknowledging that since Goad moved to withdraw

5

his plea before sentencing was complete, he needed to show good cause to justify withdrawal. Applying the factors laid out in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), the district court found that Goad had failed to do so and denied his motion.

The district court found the testimony of the parties showed that Goad's trial attorney provided competent representation. Although there may have been disagreements over strategy, his attorney represented Goad in a manner that was "professional and thorough." The district court found Goad's attorney addressed Goad's concerns when it was necessary and prudent to do so. The district court also found that while some of the Goad's allegations of insufficient trial preparation "would have warranted greater concern had they not been addressed during trial preparations," counsel said that he would have addressed them before trial had Goad not pleaded guilty. The district court also noted that although trial counsel did not discuss the difference between a no-contest plea and a guilty plea or whether Goad wanted to waive his appeal rights, the focus of the negotiations was only on the length of the sentence.

The district court found Goad was not misled, coerced, mistreated, or unfairly taken advantage of during the plea process. It explained that the mediator was an experienced trial judge with no other connection to the case. The court found the mediator gave Goad his opinion on Goad's prospects at trial and whether he should take the plea deal, and Goad was free to give that opinion as little or as much weight as he wished.

The district court also found the plea colloquy between Goad and the district court showed Goad understood the plea and it was fairly made. In the district court's view, Goad's reasons for withdrawing his plea could be summed up as "'buyer's remorse.'"

6

*Goad's Claim on Appeal*

Goad now argues the district court abused its discretion in denying his motion to withdraw his guilty plea. A district court abuses its discretion when its action is (1) arbitrary, fanciful, or unreasonable—if no reasonable person would have taken the view adopted by the court; (2) based on an error of law; or (3) based on an error of fact—if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. The party arguing an abuse of discretion bears the burden of establishing that abuse. *State v. Aguirre*, 313 Kan. 189, 195, 485 P.3d 576 (2021).

Because Goad moved to withdraw his plea before the district court decided the restitution issue, his sentencing was not complete. See *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014). A court may grant a defendant's presentence request to withdraw a guilty plea for good cause shown. K.S.A. 2020 Supp. 22-3210(d)(1). When determining whether a defendant has established good cause, courts should consider three factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Edwards*, 309 Kan. 830, 836, 440 P.3d 557 (2019) (citing *Edgar*, 281 Kan. at 36).

In analyzing the first *Edgar* factor, courts do not use the standard applied to ineffective assistance of counsel claims under the Sixth Amendment to the United States Constitution. Instead, mere lackluster advocacy may constitute good cause to support the presentence withdrawal of a plea. *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010).

The *Edgar* factors provide a helpful benchmark for judicial discretion, but they are not exclusive and should not be applied mechanically. All the factors need not apply in a

defendant's favor in every case, and a district court may consider other factors in exercising its discretion to determine whether good cause exists. *Aguilar*, 290 Kan. at 513. But a simple change of mind by the defendant does not justify disturbing a plea agreement with no evidence the defendant pleaded unwillingly or without an understanding of the consequences. *State v. Woodring*, 309 Kan. 379, 384, 435 P.3d 54 (2019).

Goad argues the district court's denial of his motion was unreasonable. He claims all three *Edgar* factors are present in his case. As he did before the district court, Goad alleges his trial attorney did not adequately investigate his case, failed to share or review portions of the investigatory record with him, withheld possibly exculpatory information, and failed to review the State's motions with him. Goad argues these deficiencies influenced his decision to plead guilty. Goad also again claims his plea was not freely and voluntarily made because when he decided to plead guilty, he was overridden with anxiety and believed that his attorney was not adequately prepared for trial. Finally, Goad claims his plea was not fairly and understandingly made because he felt like he had no choice, did not have time to analyze his options, and did not know that a no-contest plea was an option.

To establish that the district court's denial of his motion was unreasonable, and thus an abuse of discretion, Goad must show that no reasonable person would have taken the view adopted by the district court. Reviewing the district court's ruling below, Goad has not met this high bar.

The district court weighed the evidence and credibility of both Goad and his trial attorney. The court found Goad's attorney was competent and adequately shared information with Goad. The court also found his attorney would have addressed any other areas of insufficient preparation before trial had Goad not pleaded guilty. And the district court noted that trial counsel provided Goad with copies of the motions and his responses

8

and did not discuss the motions with Goad because they were not fact-specific. Based on trial counsel's testimony, a reasonable person could find that he provided competent representation.

A reasonable person could also find that trial counsel's failure to explain a no-contest plea as a hypothetical third option does not provide good cause for Goad to withdraw his plea. Trial counsel presented the State's proposed terms to Goad, reviewed the offer with Goad, and conveyed Goad's counteroffer to the State. Goad's only concern during negotiations was the length of the sentence. And it is speculative that the State would have even considered a deal in which Goad entered a no-contest plea. A reasonable person could thus find that trial counsel's failure to discuss a no-contest plea as a potential counteroffer does not render his performance incompetent.

The district court also found no evidence showed that Goad was misled, coerced, mistreated, or unfairly taken advantage of during the plea process. Goad was engaged in plea negotiations for over a month before deciding to plead guilty. Goad decided to do so after mediation and after speaking with this mother. Based on these facts, a reasonable person could find that Goad, after having well over a month to consider the State's offer, made a free and voluntary decision to follow the mediator's advice.

Finally, the district court reasonably found that Goad's plea was fairly and understandingly made. In support, the district court pointed to Goad's answers to the court's questions at both his plea hearing and his sentencing hearing. At his plea hearing, Goad acknowledged that he had read and understood the terms of his plea agreement. At the same hearing, the district court advised Goad at length of the rights he was giving up by pleading guilty. Trial counsel also testified that he went through the plea tender paragraph by paragraph, ensuring that Goad understood the consequences of his plea. Based on this evidence, a reasonable person could find that Goad's plea was fairly and understandingly made.

Affirmed.