IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,637

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN WILLIAM EUGENE BILBREY,
*Appellant*.

SYLLABUS BY THE COURT

1.

Before sentencing, a defendant may withdraw his or her plea for good cause shown.

2.

When determining whether a defendant has demonstrated good cause, district courts generally look to the following three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.

3.

We review a district court's decision to deny a motion to withdraw a guilty or no contest plea for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would take the view adopted by the district court; (2) it is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) it is based on an error of fact, i.e.,

1

substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.

4.

The applicable legal standard when considering the competence of counsel for purposes of withdrawing a plea under the first factor under *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), is well established. When a defendant moves to withdraw a plea after sentencing, a trial court must use the Sixth Amendment constitutional ineffective assistance standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to consider whether the defendant was represented by competent counsel. But when the same motion is made before sentencing, a lower standard of lackluster advocacy may constitute good cause to support the presentence withdrawal of a plea.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 15, 2022. Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed February 10, 2023. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause, and was on the briefs for appellant.

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: Before sentencing, Dustin William Eugene Bilbrey moved to withdraw his no contest pleas to aggravated robbery, conspiracy to commit robbery, burglary, and arson. Bilbrey argued withdrawal of his pleas was warranted by good cause

because (1) defense counsel was incompetent by refusing to provide Bilbrey with all available video discovery and (2) the State coerced Bilbrey into entering a plea agreement by threatening to prosecute his brother on prior drug charges. Finding Bilbrey failed to establish good cause to withdraw his pleas, the district court denied Bilbrey's motion and sentenced him to prison. A Court of Appeals panel affirmed.

On review, Bilbrey challenges the panel's ruling, arguing the district court abused its discretion by committing legal and factual errors in denying his motion. We disagree. First, the district court applied the correct legal standard in reviewing Bilbrey's claim that his attorney was not competent. Second, we find substantial competent evidence supports the district court's factual determination underlying its decision that Bilbrey's plea was not coerced. Thus, we affirm the panel's decision finding the district court did not abuse its discretion in denying Bilbrey's motion to withdraw his pleas.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2019, the State charged Bilbrey with aggravated robbery, aggravated assault, and battery. The State later amended the complaint to include eight additional charges: conspiracy to commit aggravated robbery, aggravated robbery, conspiracy to commit robbery, aggravated battery, burglary of a motor vehicle, theft, conspiracy to commit burglary of a motor vehicle, and arson.

The district court appointed attorney John Sheahon to represent Bilbrey. Through Sheahon, Bilbrey waived his right to a preliminary hearing, pleaded not guilty to all charges, and moved to suppress statements he made to law enforcement in June 2019.

At a hearing on Bilbrey's suppression motion in November 2019, Sheahon advised the court that the State had offered Bilbrey a plea agreement with a 138-month prison

3

sentence, but Bilbrey had refused the offer against counsel's advice. Speaking on his own behalf at the hearing, Bilbrey told the court he had not yet seen all the evidence against him despite asking Sheahon for months to see it. Bilbrey said he did not "have all the information to make a decision" on whether to accept a plea deal and felt it was unfair to ask him to do so when he had not yet seen most of the video evidence or read witness statements the State had provided to Sheahon in discovery. After the State said it would leave the plea offer open, Bilbrey agreed to a continuance to allow for additional time to review the discovery with Sheahon.

In January 2020, the parties again appeared before the district court on the suppression motion. The prosecutor summarized the parties' ongoing unsuccessful efforts to reach a plea agreement. Bilbrey acknowledged to the court that Sheahon had advised him to accept the State's most recent plea offer of 111 months, but explained he rejected it because he still had not seen all the discovery, which included videos of the vehicle burglary and two of the three robberies. Bilbrey advised the court he wanted to personally see all the evidence against him before deciding whether to accept the plea agreement. For his part, Sheahon advised the court that he had given Bilbrey a box of discovery with everything but the videos, explaining he did not include the videos because there was no way for Bilbrey to watch them in jail. Sheahon further explained, however, that he had viewed the videos and described their contents to Bilbrey. When Bilbrey asked whether he had a right to personally watch the videos, the district court replied that it did not know of any such right.

The case proceeded to a jury trial in March 2020. On the morning trial was set to begin, the parties again entered plea negotiations and eventually reached an agreement on the charges Bilbrey would plead to and the maximum prison sentence he would serve. In a handwritten addition to the plea agreement, the parties also agreed the State would not

charge Bilbrey's brother with methamphetamine possession stemming from a May 2019 incident.

Consistent with the plea agreement, Bilbrey pleaded no contest to aggravated robbery, conspiracy to commit robbery, burglary of a motor vehicle, and arson. The State dismissed the remaining charges with prejudice. The parties jointly recommended a prison sentence of 111 months with Bilbrey free to seek a dispositional departure to probation and drug treatment. During the plea colloquy, Bilbrey advised the district court he had read, signed, and understood the tender of plea document; he had sufficient time to discuss his case with his attorney; he had sufficient time to discuss and consider the plea agreement; he was not under the influence of alcohol or drugs; he was making a clear, informed, and voluntary decision to plead; and he read and understood the charges he was pleading to, the rights he was giving up by entering the pleas, and the sentence he faced for each charge. Bilbrey denied he had been treated unfairly or had otherwise been pressured, threatened, or intimidated to enter the pleas. Bilbrey responded affirmatively when the district court asked if he was satisfied with Sheahon's legal assistance and advice.

In June 2020, before sentencing, Bilbrey moved pro se to withdraw his pleas. Relevant here, Bilbrey argued Sheahon's representation "fell below a reasonable standard of objectiveness" by failing to show him all the video evidence. Bilbrey also claimed the State coerced him to enter into a plea agreement by threatening to incarcerate his brother. The district court allowed Sheahon to withdraw, appointed new counsel, and scheduled the motion for an evidentiary hearing. At the evidentiary hearing, the district court heard testimony from Bilbrey, Sheahon, and prosecutor Brock Abbey.

Bilbrey testified he had not seen all the State's evidence and Sheahon only reviewed one video with him. On cross-examination, however, Bilbrey admitted he personally reviewed police reports describing the contents of all the videos.

Bilbrey also testified that, on the morning of trial, Abbey threatened to arrest or file an arrest warrant for his brother if Bilbrey did not take the plea deal. Bilbrey said he did not advise the court of his concerns at the plea hearing because everything was moving fast, and he was scared his brother would be arrested.

Sheahon testified he received 10 to 15 videos in discovery and showed Bilbrey one of them. But Sheahon also said he watched all the videos and discussed their contents with Bilbrey. According to Sheahon, he discussed plea options with Bilbrey during every meeting, including the night before trial. Sheahon said Bilbrey initiated the meeting with Abbey on the morning of trial to discuss a potential plea deal, and during that meeting the parties discussed Bilbrey's brother being charged if Bilbrey did not plead. Sheahon understood Bilbrey to be concerned that his choices would impact his brother's life and that he did not want his brother to be charged with any crimes. Sheahon denied that Abbey ever threatened Bilbrey or that Bilbrey ever complained he felt threatened or coerced by Abbey.

Abbey testified about his office's ongoing plea negotiations with Bilbrey. On the morning of trial, Abbey said Sheahon asked him to speak with Bilbrey and explain the State's position that it would not agree to a sentence of less than 111 months. Abbey did not recall the parties discussing his brother's potential drug charges until that meeting. Abbey said he first learned about Bilbrey's request that his brother not be charged when he reviewed Bilbrey's June 2019 statements to law enforcement, which he did in preparation for the suppression hearing. Abbey requested a charging affidavit for Bilbrey's brother a week before trial, which would have included charges for possession

6

of methamphetamine and drug paraphernalia. Abbey did not remember who initiated the conversation about his brother's outstanding drug offenses at the meeting on the morning of trial. Instead, Abbey tied the issue back to Bilbrey's statements during his 2019 police interview, where there is no dispute that Bilbrey expressly asked law enforcement not to prosecute his brother for the drug offenses. Abbey denied threatening or intimidating Bilbrey.

After considering the above testimony and argument from counsel, the district court denied Bilbrey's motion to withdraw his pleas. Citing K.S.A. 2018 Supp. 22-3210(d)(1) and the three nonexclusive factors set forth in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), the court held Bilbrey failed to show good cause to withdraw his pleas. The court found Bilbrey was represented by competent counsel; he failed to show he was misled, coerced, mistreated, or unfairly taken advantage of; and his pleas were fairly and understandingly made.

At sentencing, the district court denied Bilbrey's renewed motion to withdraw his pleas and his motion for a dispositional departure. The court imposed a controlling 111-month prison sentence with 36 months of postrelease supervision.

On direct appeal, Bilbrey argued the district court abused its discretion in denying his motion to withdraw his pleas. A Court of Appeals panel affirmed, holding substantial competent evidence supported the district court's factual finding that the State had not coerced Bilbrey into taking a plea. The panel also determined the district court did not err in finding Bilbrey was represented by competent counsel. See *State v. Bilbrey*, No. 123,637, 2022 WL 1123540, at *5-8 (Kan. App. 2022) (unpublished opinion).

We granted Bilbrey's petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-

2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

We begin our analysis with the controlling principles of law governing withdrawal of pleas. Before sentencing, a defendant may withdraw his or her plea for "good cause shown." K.S.A. 2021 Supp. 22-3210(d)(1). When determining whether a defendant has demonstrated good cause, district courts generally look to the following three factors, commonly referred to as the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). While the *Edgar* factors establish "viable benchmarks" for the district court when exercising its discretion, "it is important to note that courts 'should not ignore other [non-*Edgar*] factors impacting a plea withdrawal that might exist in a particular case.'" *Frazier*, 311 Kan. at 381 (quoting *State v. Shaefer*, 305 Kan. 581, Syl. ¶ 2, 588, 385 P.3d 918 [2016]). To the extent the district court's exercise of discretion is informed by findings of fact, appellate courts will not reweigh evidence or reassess witness credibility. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

Having set forth the controlling law, we turn to the applicable standard of appellate review. We review a district court's decision to deny a motion to withdraw a guilty or no contest plea for an abuse of discretion. *Frazier*, 311 Kan. at 381. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would take the view adopted by the district court; (2) it is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion;

8

or (3) it is based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Bilbrey bears the burden to prove the district court erred in denying the motion. See *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021).

In his petition for review, Bilbrey claims the district court abused its discretion in denying his motion to withdraw pleas by relying on errors of law and errors of fact in applying the *Edgar* factors. We address each of his claims in turn.

*Abuse of discretion based on an error of law*

Bilbrey argues the district court abused its discretion by applying the wrong legal standard to determine he had competent counsel under the first *Edgar* factor. Although Bilbrey made many complaints about Sheahon's representation in his motion to withdraw his pleas, the argument before us is limited to Sheahon's failure to show him all the video evidence. In rejecting this specific claim of error, the district court concluded Sheahon's representation was competent:

> "As to the sixth allegation, the defendant alleges, essentially, that counsel failed to obtain and show him full discovery. The defendant testified that he asked multiple times to see the evidence, including videotapes and body cams. Mr. Sheahon testified that he received and reviewed 10 to 15 videos in the case. The defendant did ask him multiple times to watch the videos.
>
> "Mr. Sheahon discussed with the defendant the content of the videos and police report. The defendant acknowledged he did watch the video of the incident involving the robbery at the truck stop, which showed him with the defendant. The defendant acknowledged that he was told what happened at the Shady Lady was on video. The defendant testified that he reviewed the typed police reports involving the investigations.

The defendant watched one video, including his statements to deputies at the hearing on the motion to suppress.

"The Court found Mr. Sheahon's testimony that he reviewed the videos and discussed them with the defendant to be credible. As Mr. Sheahon personally viewed the videotapes and discussed the contents with the defendant, and the defendant acknowledged that he reviewed the police reports, the Court finds the defendant was, the defendant was sufficiently advised of the contents of the videotapes and the evidence in the case.

"*The Court is not aware of any statute or caselaw that requires defense counsel to provide the defendant with the videos to personally view*. After considering the defendant's claim and the evidence presented at the hearing, the Court finds that this factor favors the State and a finding that the defendant was represented by competent counsel." (Emphasis added.)

Bilbrey claims the italicized language in the court's comment set forth above indicates the district court applied the wrong legal standard to determine he had competent counsel under the first *Edgar* factor. Specifically, he argues the district court improperly used the constitutional ineffective assistance of counsel standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to determine the competency of counsel under the first *Edgar* factor instead of the lesser standard of lackluster advocacy. See *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010) ("Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea.").

The applicable legal standard when considering the competence of counsel for purposes of withdrawing a plea under the first *Edgar* factor is well established. When a defendant moves to withdraw a plea after sentencing, a trial court must use the Sixth Amendment constitutional ineffective assistance standard under *Strickland* to consider

whether the defendant was represented by competent counsel. *Aguilar*, 290 Kan. at 512-13. But when the same motion is made before sentencing, a lower standard of lackluster advocacy may constitute good cause to support the presentence withdrawal of a plea:

> "[I]t may be logical and fair to equate the K.S.A. 22-3210(d) manifest injustice standard governing a post-sentence plea withdrawal motion to the high burden imposed on a constitutional claim of ineffective assistance. [Citations omitted.] . . . [T]he plain language of the statute—'for good cause shown *and within the discretion of the court*'— should not be ignored. A district court has no discretion to fail to remedy a constitutional violation.

> "It is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden. The *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet. Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea." *Aguilar*, 290 Kan. at 513.

Although "no caselaw supplies an exact meaning of lackluster advocacy," the dictionary definition of "'lackluster'" means "'lacking energy or vitality; boring, unimaginative, etc.'" *State v. Herring*, 312 Kan. 192, 201, 474 P.3d 285 (2020).

Bilbrey's argument centers on the district court's comment that it was "not aware of any statute or caselaw that requires defense counsel to provide the defendant with the videos to personally view." He claims the court's comment, along with its failure to expressly use the words "lackluster advocacy" on the record when ruling on the first *Edgar* factor, strongly suggests the court improperly applied the *Strickland* constitutional standard in deciding whether he had shown good cause to withdraw his pleas. Bilbrey cites *Herring* in support of his claim.

11

In *Herring*, the district court denied the defendant's presentence motion to withdraw his plea. The court expressly applied *Strickland* when considering the first *Edgar* factor. On direct appeal, the Court of Appeals found the district court erred by using the *Strickland* test instead of the less stringent lackluster advocacy standard specified by *Aguilar*. But the panel held the error was harmless because, on appellate review, the record conclusively showed counsel's representation was "'far from lackluster.'" 312 Kan. at 197.

On review, this court reversed the panel's decision, holding the district court's improper use of the *Strickland* standard was not amenable to a harmless error analysis because it is the role of the district court, not the appellate court, to apply the lackluster advocacy standard and determine counsel's competence under the good cause statutory requirement. Thus, we remanded the case to the district court with directions to reassess the first *Edgar* factor under the lackluster advocacy standard. *Herring*, 312 Kan. at 199-200, 202. In concluding remand was warranted, we explained:

> "Although we emphasize that we do not express any opinion on the merits of Herring's plea withdrawal motion, this record at least shows circumstances that might be fairly characterized as 'lackluster' advocacy, such as [counsel] not letting Herring review the surveillance recordings until the court ordered him to do so; or not listening to the jail call recording until the first morning of trial despite having received it the week before. A reviewing court may think it understands how a district court should view these circumstances, but it cannot know for sure until the lower court does the analysis. The district court must decide first whether these facts, taken in consideration with the rest of Herring's case, amount to good cause under the lackluster advocacy standard." 312 Kan. at 201.

As in *Herring*, the first question to ask here is whether the district court applied the wrong legal standard under the first *Edgar* factor. Bilbrey correctly points out that,

like in *Herring*, the district court here did not expressly use the words "lackluster advocacy" on the record in ruling on his motion. But, as the panel below recognized, our caselaw does not require the court to expressly use the words "lackluster advocacy" on the record in ruling on a motion to withdraw plea under the first *Edgar* factor. *Bilbrey*, 2022 WL 1123540, at *6. When, as here, a defendant files a presentence motion to withdraw a plea based on ineffective assistance of counsel, the court need only evaluate whether counsel's representation was competent. See *Aguilar*, 290 Kan. at 513-14; *Edgar*, 281 Kan. at 36.

And the district court did just that. There is no indication here the court erroneously applied a heightened constitutional standard for Bilbrey to meet. Contrary to Bilbrey's argument, the court's brief comment on Bilbrey's failure to cite authority requiring defense counsel to allow defendants to personally view videos does not suggest the court improperly applied the *Strickland* constitutional standard in deciding whether he had shown good cause to withdraw his pleas. And unlike *Herring*, the court did not cite *Strickland* or otherwise reference the constitutional standard for ineffective assistance of counsel. Rather, the court cited and applied the *Edgar* factors in ruling on Bilbrey's motion, including the first *Edgar* factor regarding attorney competence. The court addressed each of Bilbrey's claims and concluded Sheahon was competent in his representation. Specific to the video evidence, the court found credible Sheahon's testimony that he discussed with Bilbrey the contents of all the videos and police reports. The court also noted Bilbrey's testimony that (1) he had seen one of the videos, (2) Sheahon advised him of the contents of the other videos, and (3) he had reviewed the police reports describing the substance of all the videos.

In sum, the district court applied the correct legal standard and thus did not abuse its discretion in reviewing and ultimately denying Bilbrey's motion to withdraw plea under the first *Edgar* factor.

13

*Abuse of discretion based on an error of fact*

In support of his good cause argument to sustain his motion to withdraw plea, Bilbrey relied on the second *Edgar* factor to argue the State coerced him into entering the plea agreement by threatening to prosecute his brother on prior drug charges. In denying Bilbrey's motion to withdraw on this point, the district court held, in relevant part,

"As to the claim that he felt threatened by Mr. Abbey on the morning of the trial, the Court finds that the defendant told his attorney he wanted to personally speak to Mr. Abbey to confirm the offer of 111 months was the best offer. As the defendant requested, Mr. Abbey went to meet with the defendant in the holding cell, with Mr. Sheahon present. The meeting lasted five to 10 minutes.

"*At that meeting with Mr. Abbey and Mr. Sheahon, the defendant requested that his brother not be charged*. Mr. Abbey had discovered in preparation for the hearing on defendant's motion to suppress that defendant's brother had not been charged, but could be charged. Mr. Abbey had already requested a charging affidavit from the police department relating to defendant's brother's involvement.

"Mr. Abbey advised the defendant that if he went to trial, his request that his brother not be charged would not be honored. . . .

"During the plea colloquy, the defendant was specifically asked whether he felt pressured, threatened, or intimidated into entering into the plea agreement. He was asked whether he felt he was treated unfairly. The defendant answered, No, to these questions.

"The Court finds the defendant has failed to show that he was misled, coerced, mistreated, or unfairly taken advantage of by either his attorney or the State." (Emphasis added.)

14

Bilbrey challenges the district court's italicized finding above as factually erroneous and unsupported by the record. Specifically, he argues there is no evidence to support a finding that, on the morning of trial, he asked the prosecutor not to bring criminal charges against his brother. Through a series of speculations and suppositions based on this alleged factual error, Bilbrey contends the district court would have found the State coerced him into entering the plea agreement by threatening to prosecute his brother on prior drug charges.

Putting aside the speculation and supposition, we turn to the narrow finding made by the district court alleged by Bilbrey to be factually erroneous and unsupported by the record: on the morning of trial, Bilbrey asked the prosecutor not to bring criminal charges against his brother. Our task is to decide whether this finding is supported by evidence in the record. Based on the following excerpt from the motion to withdraw plea transcript, we conclude the court's finding is supported by substantial competent evidence:

> "Q. (BY MR. ALLEN) During the negotiations you were having with Mr. Sheahon on Mr. Bilbrey's behalf, were other parties being impacted by those negotiations, specifically Mr. Bilbrey's brother and the codefendant?
>
> "A. [BY ABBEY] I don't remember a discussion with Mr. Sheahon regarding the defendant's brother until the morning of trial. *I was aware of Mr. Bilbrey's request that his brother not be charged*, and I came upon that information, preparing for the motion to suppress, listening to the videotape of his interview and the transcript and the police reports of it. That's really how I initially became aware that his brother hadn't been charged and could possibly be charged, was in that preparation.
>
> "Q. Okay. So I want to jump forward then to the morning of the trial. Who initiated the conversation regarding the status of his brother, if the trial was to proceed?

"A. I remember a discussion about it. I don't remember who initiated that topic.

"Q. During that discussion—obviously, it included Mr. Bilbrey's brother and the charges—what do you recall telling Mr. Bilbrey regarding if he chose to exercise his right to go to trial?

"A. *That his request that his brother wouldn't be charged wouldn't be honored*, that I had requested—I believe I told him I had requested a charging affidavit to charge his brother. And I'm basing that recollection on that I reviewed my own phone records and found a call and text with Rachel Larson. The text said, Can I have a minute to talk to you? And then the phone record said there was several minutes, 6 to 10 maybe, of a phone conversation. And I remember it was at that time on March 3rd that I asked her to send over a charging affidavit.

"Q. And the trial date?

"A. Was March 11th, the same day as the plea.

"Q. So a week before you had started contemplating issuing charges for Mr. Bilbrey's brother?

"A. Yes."

Having concluded the district court's finding is supported by substantial competent evidence, Bilbrey's claim of factual error fails and we find no abuse of discretion in the court's decision to deny Bilbrey's motion to withdraw plea based on his allegations of coercion.

16

CONCLUSION

The district court applied the correct legal standard in reviewing Bilbrey's claim of attorney incompetence. And substantial competent evidence supports the court's determination that Bilbrey's plea was not coerced. As a result, the district court did not abuse its discretion in concluding Bilbrey failed to establish good cause to withdraw his pleas.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

17